UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

JOSEPH HAYON,

                    Petitioner,

          -against-                          20-cv-04668 (PKC)

PATRICK REARDON,

                    Respondent.

MEMORANDUM OF LAW

DEFENDANT'S MOTION SHOULD BE DENIED AS
MERITLESS.

The 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's analysis of the Petition.  See Mancuso v. Herbert, 166 F.3d 97, 99 n.1, 101 (2d Cir. 1999) (AEDPA applies to a habeas petition filed after AEDPA's effective date).  As relevant here, relief is available under AEDPA only if a petitioner shows that his conviction was obtained in violation of "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

To obtain federal habeas relief on a claim, a petitioner must generally show that he exhausted that claim in state court. 28 U.S.C. § 2254(b)(1)(A).  This long-time requirement of federal habeas corpus is "grounded in principles of comity and reflects a desire to protect the state courts' role in the enforcement of federal law."  Castille v. Peoples, 489 U.S. 346, 349 (1989) (citation and quotation marks omitted).  To properly exhaust a claim, a petitioner must generally "invok[e] one

complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

The Second Circuit has recognized that a failure to exhaust may be excused, however, where there has been "substantial delay in the state criminal appeal process." Roberites v. Colly, 546 F. App'x 17, 19 (2d Cir. 2013) (summary order) (quoting Cody v. Henderson, 936 F.2d 715, 718 [2d Cir. 1991]). Five factors are relevant in analyzing this issue: the length of the delay, whether a petitioner asserted his right to a decision, the reason for the delay and the party responsible, ensuing prejudice, and federal-state comity. See id. (citing, inter alia, Barker v. Wingo, 407 U.S. 514, 530 [1972]). Relatedly, a federal court may also consider, under the same standards, a habeas petitioner's due process claim that his right to a speedy appeal has been violated, independent of the petitioner's claims directly concerning the validity of his conviction. Id. at 20-21.

Here, although some of the factors arguably weigh in defendant's favor, defendant has not established that delay in his state direct appeal should excuse his failure to exhaust or that any such delay entitles him to further relief. Moreover, even if defendant were entitled to relief, he would be entitled, at most, to a conditional grant of relief only if his appeal does not begin moving forward. Finally, in an abundance of

caution, Respondent notes that none of defendant's remaining arguments justify granting relief.

> (a) <u>The Length of the Delay Weighs Weakly, If At All, in Defendant's Favor</u>.

Defendant filed a notice of appeal on February 1, 2018 (Exh. B), and, as of the date of this opposition, his direct appeal remains pending. Thus, his direct appeal has been pending for slightly less than two years and ten months, <u>i.e.</u>, thirty-four months. While such delay is unusual, the delay in defendant's case has only just reached the threshold where courts find that this factor weighs sufficiently in favor of a petitioner to analyze this issue further. <u>See Barker</u>, 407 U.S. at 530 (length of delay "is to some extent a triggering mechanism," and "presumptively prejudicial" delay is necessary before other factors are considered). Indeed, most authority on this point involves lengthier delays. <u>See Cody</u>, 936 F.2d at 718 (analyzing "substantial delay" of nine-and-one-half-years); <u>Simmons v. Reynolds</u>, 898 F.2d 865, 870 (2d Cir. 1990) (exhaustion doctrine "does not require a petitioner to wait six years, as [petitioner] did here, or even three or four years before enlisting federal aid to expedite an appeal"); <u>Brooks v. Jones</u>, 875 F.2d 30, 30-31 (2d Cir. 1989) (defendant's opening brief was filed almost eight years after he was convicted); <u>Mathis v. Hood</u>, 851 F.2d 612, 614 (2d Cir. 1988) (analyzing

issue in light of six-year delay); <u>but</u> <u>see</u> <u>Roberites</u>, 546 F. App'x at 19-20 (factor favored petitioner where thirty-two months had passed between filing of direct appeal and filing of <u>habeas</u> petition, and "over three years" had passed by the time district court denied <u>habeas</u> petition); <u>see</u> <u>also</u> <u>Richard-Antonio v. O'Meara</u>, 2013 U.S. Dist. LEXIS 134393, *18 (S.D.N.Y. May 21, 2013), <u>report and recommendation adopted</u>, 2013 U.S. Dist. LEXIS 133753 (three-year delay in filing principal brief "trigger[ed] due process concerns" but ultimately did not violate the Constitution);[3] (First E.D.N.Y. Dkt., text entry of 12/9/19 ["20-month delay relating to [defendant's] direct appeal [was] not so unreasonable so as to establish undue delay"]).

Accordingly, this factor weighs, at most, weakly in defendant's favor.

> (b) <u>Defendant's Assertion of His Rights Weighs Weakly, If At All, in Defendant's Favor</u>.

Undoubtedly, defendant has mentioned delay in his direct appeal in several <u>pro</u> <u>se</u> state court filings. He may also have discussed it with counsel, although the available record is somewhat vague (<u>see</u> Exh. N at 74 [May 14, 2019, letter from Appellate Advocates saying, in part, that counsel had "checked the status of [defendant's] direct appeal with the paralegal"

---

[3] Pursuant to Local Rule 7.2, Respondent is providing defendant with copies of any decisions cited in this filing that are not officially reported and are available only on computerized databases.

and had "asked the paralegal to expedite the review"]). However, it is frequently unclear which of defendant's filings were provided to Appellate Advocates, his counsel on direct appeal, or the Second Department (see Exh. N at 3-4, 54-74 [addressing defendant's "rights to a speedy appeal" in pro se reply in further support of bail motion and attached exhibits before trial court]; cf. Pet. at 15-17 [claiming that defendant raised speedy appeal claim in "Greene County Court" and noticed an appeal from that proceeding to the Appellate Division, Third Department, although he further contends that the appeal was subsequently transferred to the Second Department]).[4]  Moreover, defendant's mentions of appellate delay were not necessarily accompanied by requests for relief on that score: indeed, when

---

[4] The People's files contain no records related to the alleged "Greene County Court" petition or any appeal therefrom.  New York's eCourts system substantiates that such a proceeding was filed in August 2019 and closed in October 2019, under Supreme Court Civil Case Index Number 0000710/2019, but copies of filings in the case are not available.  That system also memorializes, at a similar level of generality, a state habeas petition filed in Erie County Supreme Court in January 2020 and denied the same month (Supreme Court Civil Case Index Number 000006/2020); a state habeas petition filed in Kings County Supreme Court in January 2020 and denied in February 2020 (Supreme Court Civil Case Index Number 000480/2020); and a state habeas petition filed in Oneida County Supreme Court in October 2020 and denied in November 2020 (Supreme Court Civil Case Index Number 1302010/2020); see also Pet. at 9-23 (noting several of these state proceedings).  These trial court actions generally would not have given the Second Department or defendant's attorney notice of his appellate delay claims; in any event, even if this factor somewhat favors defendant, as discussed infra, other factors weigh strongly against granting relief.

defendant mentioned the issue before the Second Department, the relief he requested was at odds with his claims of delay (see Exh. G at 2-3 [acknowledging, in Second Department filing, that ordering additional transcripts could cause substantial additional delay but nevertheless maintaining that "the minutes of ALL pretrial court appearances [we]re necessary" to review his claims]).  The steps defendant took were, in any event, far fewer than those taken in the relevant cases in this area.  See Roberites, 546 F. App'x at 20 (factor favored petitioner where petitioner ultimately moved for appointment of new counsel after counsel failed to take any action on his behalf); Simmons, 898 F.2d at 866, 868 (factor favored petitioner where petitioner, his family, and his caseworker made "frequent inquiries" of his attorney and contacted prior counsel, KCDA, and Second Department to "prod" counsel into perfecting appeal); Brooks, 875 F.2d at 30-31 (factor favored petitioner where petitioner had successfully petitioned to proceed pro se, filed several motions in Second Department, and filed civil suit against prior counsel); Richard-Antonio, 2013 U.S. Dist. LEXIS 134393, *24 (relevant factors are "whether the petitioner takes steps to obtain counsel," "whether the petitioner regularly inquires of his counsel or the court about the delays in his appeal," and "whether the petitioner files a grievance against his appointed counsel").

Thus, at most, this factor weakly favors defendant.

(c)   <u>The Reason for the Delay and the Party
Responsible Weighs Heavily against Defendant</u>.

Even if the delay in this case were lengthy, and even if
defendant had diligently asserted his rights, the reasons for
the delay fatally undermine defendant's claims.

Some of the time that has elapsed is undoubtedly
attributable to the sheer volume of work facing the state
courts, court reporters, and prosecutors.  For instance, it took
about four months after defendant filed his notice of appeal for
the Second Department to open a case file on his behalf (Exhs.
B, C), plus one more month before Appellate Advocates was
assigned (Exh. D).   Once defense counsel requested trial
exhibits from the KCDA, it took a few months for that request
(apparently complicated by the presence of child pornography in
the case file) to be fulfilled (Exh. E).   It also took several
months for the Second Department to adjudicate Appellate
Advocates' motion to expand the record after it was fully
briefed (Exhs. H, I).   The production of transcripts likewise
took several months – many of them during the COVID-19 pandemic
- especially because there were more transcripts than usual
produced in this case (<u>see</u> Exh. I).

However, the vast majority of the time that has elapsed in
this case is attributable to defendant and appellate counsel

working to review defendant's case and prosecute his appeal. Throughout the appeal, Appellate Advocates has received and reviewed the trial record, which spans several years; requested and received the trial exhibits; recognized that evaluating one claim required expansion of the record; and received and reviewed additional transcripts produced as a result of a successful motion to expand the record (Exhs. D, E, F, I).

Defendant has generally supported counsel's actions, even where they have resulted in additional delay: indeed, defendant has claimed that, in July 2019, defendant himself "explained to" counsel that "the entire pre-trial record" was necessary to pursue speedy trial and grand jury claims in this case (Exh. N at 56 [describing conversation with counsel]). A few months later, defendant confirmed in a Second Department filing that "the minutes of ALL pretrial court appearances [we]re necessary" to review his speedy trial claim, notwithstanding the additional delay producing them could cause (Exh. G). Defendant also has not requested a new attorney; moreover, in December 2019, defendant specifically requested that Appellate Advocates further be assigned to represent him in his § 440 proceedings because other assigned counsel had "failed to properly represent [him]," and he also reiterated that he "need[ed] transcripts for all pretrial hearings" (Exh. S). Before this Court, he has

recently asserted that his then-assigned appellate counsel was "very recom[m]ended" (Second E.D.N.Y. Dkt., Doc. 7 at 2).

Thus, the delay in this case is attributable to defendant and appellate counsel working diligently on defendant's case, and defendant has generally been satisfied on that score. This case is far removed from cases where federal intervention was warranted because an appeal had "stalled," appellate attorneys had done little to pursue an appeal, and a petitioner had simply languished in the meantime. See Roberites, 546 F. App'x at 20 (factor favored petitioner where initial appellate counsel failed to perfect the state appeal or "otherwise take any action on Roberites's behalf before being relieved," second appellate counsel similarly failed to perfect appeal, and Appellate Division denied defendant's motion to appoint new counsel but did not secure counsel's compliance with an order to perfect); Simmons, 898 F.2d at 868 (attorney failed to file brief during five years of assignment, leaving petitioner "helpless in maneuvering through the complicated system of New York state appellate procedure by himself in his diligent but misdirected attempts to have his appeal heard," and ultimately had to be removed from case); Brooks, 875 F.2d at 31 (describing "inexcusable neglect by a succession of assigned counsel, who relieved one another but did little else" over eight-year period); Mathis, 851 F.2d at 613 (noting lengthy delays

attributable to two "dilatory" attorneys who generally did not communicate with petitioner); see also Richard-Antonio, 2013 U.S. Dist. LEXIS 134393, *19, *23 (lost time attributable to petitioner did not establish undue delay, and much of the delay was also attributable to "neutral" cause of court reporters' "tardy production of transcripts," which did not support a finding that due process had been violated); cf. Barker, 407 U.S. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect.").

Accordingly, the reasons for the delay and the party responsible weigh heavily against defendant.

  (d) <u>The Absence of Meaningful Prejudice Weighs Heavily Against Defendant</u>.

The absence of meaningful prejudice also weighs heavily against defendant. This factor is generally designed to prevent "oppressive post-trial incarceration, should the appeal ultimately prove successful," to "minimize anxiety and concern of the accused," and "to limit the possibility that the appeal and any resulting retrial will be compromised by the passage of time." See Cameron v. Lefevre, 887 F. Supp. 425, 433 (E.D.N.Y. 1995) (citation omitted). The last factor is the most important one. Id.

The Motion makes virtually no showing on this point, and defendant certainly makes little showing differentiating him

from any other defendant whose appeal has been delayed.   To be
sure, he is nearing the end of a relatively short sentence, and
his incarceration has, no doubt, caused him some level of
anxiety and concern.   However, if his state appeal is affirmed,
his injury does not involve an illegal deprivation of liberty,
and, to date, the state courts that have considered defendant's
claims have found them lacking (Exhs. P, T).   "To find that
[defendant]'s incarceration is oppressive at this point would be
speculative," and defendant does not benefit from any
presumption of innocence.   Cameron, 887 F. Supp. at 433; see
also Cousart v. Hammock, 580 F. Supp. 259, 269 (E.D.N.Y. 1984)
("[T]he need to protect a person who has been convicted of a
crime, but who appeals from his conviction, against anxiety and
incarceration is considerably weaker" than the need to protect
"a person who has not been convicted of a crime from anxiety and
incarceration occasioned by excessive delay in the commencement
of his trial.").   Defendant's Motion also does not claim that
his appeal or any retrial has been, or will be, compromised by
delay, and, as noted supra, state courts have been able to
review several of defendant's claims, to some extent, based on
the record that already exists.   In short, "the [c]ourt cannot
assume prejudice on the basis of delay alone." Richard-Antonio,
2013 U.S. Dist. LEXIS 134393, *26; see also Paulin v. Grady,

2016 U.S. Dist. LEXIS 113907, *15 (S.D.N.Y. Aug. 24, 2016) (rejecting claim of prejudice absent specific showing).

Indeed, as set forth in greater detail supra, the delay in this case has largely been attributable to defendant and counsel methodically obtaining and reviewing the record in this case. If this proceeding, or defendant's direct appeal, went forward absent such preparation and marshalling of the relevant portions of the trial record, it would likely prejudice defendant's defense (see Second E.D.N.Y. Dkt., Doc. 7 at 3 [stating that defendant does not "know how to properly argue" likelihood of success on the merits, as this Court does not "have the record to be able to verify [his] claims"]).[5]

Accordingly, the absence of meaningful prejudice weighs heavily against defendant.

(e)  Federal-State Comity Weighs Heavily against Defendant.

Additionally, even if defendant had otherwise shown that he was entitled to relief, federal-state comity would forestall his claim.  Such comity "assumes that the state court will decide

---

[5] Note also that dismissing the Petition for failure to exhaust would not render a subsequent petition "second or successive," nor would such a dismissal affect the timeliness of a future, exhausted petition.  See Slack v. McDaniel, 529 U.S. 473, 485-86 (2000) (habeas petition filed after first habeas petition was dismissed for failure to exhaust is "not a second or successive petition"); 28 U.S.C. § 2244(d)(1)(A) (AEDPA limitations period typically begins to run, at the earliest, when "judgment b[ecomes] final by the conclusion of direct review or the expiration of the time for seeking such review").

the case with dispatch and that the federal court should not intervene if an act of this Court will not accelerate disposition of the appeal." Wheeler v. Kelly, 639 F. Supp. 1374, 1381 (E.D.N.Y. 1986).

As described supra, although there has been delay in this case, there is no reason to conclude that defendant's direct appeal is "stalled," as it was in most cases where a petitioner received relief. Rather, defendant's appeal is moving forward: transcripts necessary for review of defendant's claims have recently been prepared in toto, and his case has recently been reassigned to an attorney who will likely be able to perfect the appeal more expeditiously. In light of that progress, this Court should not intervene in defendant's state-court proceedings. See Intaquab Ali v. Superintendent of Otisville Corr. Facility, 2015 U.S. Dist. LEXIS 128217, *6-7 (E.D.N.Y. Sept. 23, 2015) (comity "strongly militate[s] against addressing the merits of Petitioner's claims now that his appeal has moved ahead"); Pollack v. Patterson, 2011 U.S. Dist. LEXIS 148085, *4-5 (S.D.N.Y. Dec. 22, 2011) (distinguishing "inordinate delay" cases because "proceedings in the plaintiff's case are active" and appeal had not "languished" for three or four years); cf. Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir. 1995) ("[W]e assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand

once there is reliable evidence that the state action has been reactivated."). Indeed, although in <u>Roberites</u> most of the factors favored the petitioner,[6] that panel affirmed the district court's dismissal of the petition in light of "principles of comity" and "the fact that this appeal is now moving forward." 546 F. App'x at 20.

Accordingly, federal-state comity weighs heavily against defendant.

> (f) <u>Even if Defendant is Entitled to Relief Due to State Appellate Delay, this Court Should, At Most, Issue a Conditional Writ</u>.

In the alternative, if this Court concludes that defendant is entitled to relief due to state appellate delay, he is entitled at most to a conditional writ granting relief only if defendant's appeal does not move forward in an appropriate amount of time. <u>See</u> <u>Cody</u>, 936 F.2d at 718-19 ("[T]he fact that a petitioner in such circumstances presents a cognizable habeas claim does not decide the substantive question of what type of relief, if any, is appropriate.").

As the Second Circuit has recognized, "[r]elease from custody is an extraordinary remedy, especially in a delay-of-

---

[6] The portion of the <u>Roberites</u> decision discussing exhaustion did not mention prejudice. 546 F. App'x at 20. The decision's later merits discussion of the petitioner's due process claim concluded that the petitioner had "failed to demonstrate any substantial prejudice" and, as a result, granted only "conditional relief." 546 F. App'x at 21.

appeal case where release would in effect nullify a state court conviction on grounds unrelated to the merits of the case." Simmons, 898 F.2d at 869.  Thus, "[t]he usual disposition of a meritorious habeas petition based on a delayed appeal is to grant an alternative writ that orders the state either to prosecute the appeal within a specified reasonable period of time, or to release the petitioner."  Id.  To obtain any further relief, a petitioner must show substantial prejudice to his pursuit of an appeal.  See Roberites, 546 F. App'x at 21; Muwwakkil v. Hoke, 968 F.2d 284, 285 (2d Cir. 1992); see also Richard-Antonio, 2013 U.S. Dist. LEXIS 134393, *26.  He has not done so.

Thus, even if defendant is entitled to relief due to state appellate delay, he is entitled, at most, to a conditional writ, effective only if his appeal does not move forward in an appropriate amount of time.

(g)  Defendant's Remaining Arguments Do Not Warrant Release from Custody.

This Court ordered Respondent to focus its response to the Motion on whether "any delay in [defendant's direct appeal] justifies granting [defendant] any relief" (Second E.D.N.Y. Dkt., text entry of 11/11/2020).  As set forth supra, it does not.

In an abundance of caution, Respondent also notes, briefly, that the Motion's other arguments do not warrant relief. In addition to his delayed-appeal claim, defendant contends that he should receive bail because he faces multiple "hardship[s]" in prison, he has almost completed his sentence, he is not a flight risk, and his federal claims have "palpable merit" (Mot. at 1-4).

However, bail may be granted to habeas petitioners "in special cases only." Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001). "The standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that 'the habeas petition raises substantial claims and that extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective.'" Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990) (quoting Iuteri v. Nardoza, 662 F.2d 159, 161 [2d Cir. 1981]); see also Fan v. United States, 710 F. App'x 23, 24 n.1 (2d Cir. 2018) (summary order) (citing Mapp for proposition that bail is appropriate pending habeas decision where petitioner raises "substantial constitutional claims upon which he has a high probability of success"); Morrow v. Capra, 2020 U.S. Dist. LEXIS 106085, *4 (E.D.N.Y. June 17, 2020) (to present "substantial claim," petitioner must show that his success "can be predicted with confidence" [citation omitted]).

Defendant does not satisfy these standards. First, he has fallen far short of establishing on this sparse record any possibility that his claims will succeed. As noted supra, defendant has acknowledged that he does not "know how to properly argue" his likelihood of success on the merits, as this Court does not "have the record to be able to verify [his] claims" (see Second E.D.N.Y. Dkt., Doc. 7 at 3). Respondent anticipates addressing the merits of defendant's claims in detail in responding to the Petition, but the information that is currently available is unfavorable to defendant. Several of his claims are facially dubious or incredible (see, e.g., Mot. at 3 [discussing potential claim, apparently not raised in Petition, that his attorney had a conflict of interest because public defenders are "grossly underpaid"]; Pet. at 17 [raising claim that "[t]here were no Jews in the jury wheel"]; see also Exh. P at 5-6 [court order characterizing jury-wheel claim as "based on baseless speculation"]), and components of others are cast into doubt by state-court decisions on the same or similar issues (Pet. at 9-15 [discussing habeas claims regarding bail pending appeal, speedy trial, and attorney ineffectiveness]; Exhs. P, T [trial court orders denying bail pending appeal and rejecting, inter alia, speedy trial and attorney ineffectiveness claims], Y [Second Department order denying leave to appeal from order denying § 440 motion]).

Second, defendant does not show that "extraordinary circumstances" exist that require his premature release from his sentence – imposed upon ninety-four convictions for felony offenses involving possession of "sexual performances" by children less than sixteen years of age, N.Y. Penal Law § 263.16 – in order to render <u>habeas</u> relief effective.   Indeed, the circumstances he alleges apply, in large part, to a vast array of prisoners, not the small group of "special cases" contemplated by <u>Mapp</u>.   <u>See</u> <u>Iuteri</u>, 662 F.2d at 162 (district court's grant of bail constituted abuse of discretion because case was "totally devoid of facts which distinguish it in any way from typical habeas corpus proceedings"); <u>see also</u> <u>United States v. Whitman</u>, 153 F. Supp. 3d 658, 661 (S.D.N.Y. 2015) ("Whitman asserts that this case is extraordinary because he has only several months left on his sentence. . . . This argument proves too much, however, for, if accepted, every prisoner nearing the end of a term could bring a successful bail motion in connection with a habeas petition." [citations omitted]); <u>Montes v. James</u>, 2020 U.S. Dist. LEXIS 47512, *7 (N.D.N.Y. March 19, 2020) (petitioner's "difficulties continuing to litigate his cases, specifically his transition between facilities and limited law library access, stem[med] from regular prison conditions" and did not constitute extraordinary circumstances); <u>Washington v. Franklin Corr. Facility</u>, 2019 U.S. Dist. LEXIS

208507, *4 (N.D.N.Y. Dec. 4, 2019) (contention that release from custody was necessary to obtain counsel was not an "extraordinary circumstance" because petitioner's circumstances were "not a unique situation for an inmate"); <u>United States v. Callahan</u>, 2019 U.S. Dist. LEXIS 127934, *9 (E.D.N.Y. July 31, 2019) ("[A] petitioner's continued confinement during habeas review is normally not considered an extraordinary circumstance entitling him to bail[.]"); <u>cf.</u> <u>Morrow</u>, 2020 U.S. Dist. LEXIS 106085, *5-6 (COVID-19 pandemic is not inherently an "exceptional circumstance").

Defendant needs to allege both potentially meritorious claims and extraordinary circumstances to receive bail in this proceeding. He has not done so, and his Motion should be denied.

<u>CONCLUSION</u>

<u>DEFENDANT'S   MOTION   SHOULD   BE   DENIED   AS</u>
<u>MERITLESS</u>.

Dated:      Brooklyn, New York
            November 20, 2020

                        Respectfully submitted,


                        ERIC GONZALEZ
                        District Attorney
                        Kings County

LEONARD JOBLOVE
MICHAEL BIERCE
Assistant District Attorneys
      of Counsel

<u>Certificate of Service</u>

I hereby certify that on November 20, 2020, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following party:

Joseph Hayon
DIN # 18-R-0375
Marcy Correctional Facility
9000 Old River Road
P.O. Box 3600
Marcy, NY 13403

Assistant District Attorney
Office of the Kings County District Attorney
350 Jay Street
Brooklyn, New York  11201
(718) 250-2005

21