UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOSEPH HAYON,

                Petitioner,

      - against -

PATRICK REARDON,

                Respondent.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4668 (PKC)

PAMELA K. CHEN, United States District Judge:

Joseph Hayon, proceeding *pro se*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Memorandum and Order addresses several motions and requests by Petitioner currently pending before the Court: (1) a motion for a "preliminary injunction," which effectively is a motion for bail pending determination of Petitioner's habeas petition (Dkt. 5); (2) a motion for the Court to issue the writ "forthwith" (Dkt. 6); (3) a motion for appointment of counsel under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A (Dkt. 12); and (4) several requests made in Petitioner's Memorandum of Law in support of his motion for bail, including a request for an evidentiary hearing (Dkt. 14).

## BACKGROUND

Because this order seeks to provide an expeditious decision on the currently pending motions and does not rule on the ultimate merits of the habeas petition, it focuses on the background relevant to the instant motions and requests. Any factual issue determined by the state court is presumed to be correct, unless rebutted by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). At the same time, given Petitioner's *pro se* status, his filings are "construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations, internal quotations, and alterations omitted)

1

I.      **State Court Trial and Direct Appeal Proceedings**

In 2017, following a jury trial, Petitioner was convicted of 94 counts of possession of a sexual performance by a child, in violation of N.Y. Penal Law § 263.16. (Petition, Dkt. 1, at ECF[1] 1.) On January 31, 2018, the state trial court sentenced Petitioner to 1⅓–4 years' incarceration on all counts, to be served concurrently. (*Id.*; *see also* Respondent's Affirmation Opposing Motion for Preliminary Injunction ("Resp. Aff."), Dkt. 8, ¶ 9.) On the same day, the state trial court granted Petitioner's application for poor person relief on appeal. (Dkt. 8-2.)

One day later, on February 1, 2018, Petitioner, through his trial attorney, filed a Notice of Appeal. (Dkt. 8-3.) However, because Petitioner's trial attorney improperly filed the Notice of Appeal, the Appellate Division, Second Department ("Appellate Division") did not open a case file and assign a docket number until June 11, 2018.[2] (Dkt. 8-4; *see also* Petitioner's Affirmation Supporting Motion for Preliminary Injunction ("Pet'r. Aff."), Dkt. 13, at ECF 7.) One month later, on July 11, 2018, the Appellate Division assigned Appellate Advocates, a non-profit public defender organization, to represent Petitioner on direct appeal, and ordered that transcripts of all pre-trail hearings, jury selection, trial, and sentencing proceedings be produced. (Dkt. 8-5.) After

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] Petitioner admits that his trial attorney improperly filed the Notice of Appeal with the Appellate Division instead of with the trial court, but maintains that "the Appellate Division clerk . . . should have notified my attorney that [the Notice of Appeal] was improperly filed." (Pet'r. Aff., Dkt. 13, at ECF 7.) Additionally, according to Petitioner, he recently realized that this was the reason for the delay in having a case file opened and docket number assigned. (*Id.*) It seems that at the time of these events in 2018, Petitioner was simply aware that there was a delay and began inquiring, through a friend, about when he would be appointed appellate counsel. (*Id.* at ECF 2; *see also* Affirmation of Odelia Cohen, Dkt. 15.)

these transcripts were produced,[3] Appellate Advocates submitted a request to the Kings County District Attorney's Office on May 16, 2019, for exhibits from Petitioner's suppression hearing and trial. (Dkt. 8-6.) This request, Respondent represents, was effectively fulfilled by November 7, 2019.[4] (Resp. Aff., Dkt. 8, ¶ 13.)

While the request for exhibits was pending, Appellate Advocates filed a motion with the Appellate Division on September 16, 2019, to enlarge the appellate record to include transcripts of minutes from eleven additional pre-trial proceedings, arguing that speedy-trial issues had been litigated below and transcripts from such proceedings were "necessary to the appeal." (Dkt. 8-7, at ECF 5, 7.) Petitioner, on his own, filed a supplemental affidavit on September 22, 2019, in support of the motion to enlarge the record. (Dkt. 8-8.) Petitioner's supplemental affidavit was rejected because he was represented by counsel. (Pet'r. Aff., Dkt. 13, at ECF 3, 18–19.) The state took no position on the motion. (Dkt. 8-9, at ECF 3.) Several months later, on January 13, 2020, the Appellate Division issued a decision and order granting the motion to enlarge the appellate record and directing the stenographer of the trial court to certify and file copies of transcripts from the additional pre-trial proceedings "within 45 days of the date of this decision and order." (Dkt. 8-10, at ECF 2.) It appears these additional transcripts were not prepared until September 30, 2020. (Resp. Aff., Dkt. 8, ¶ 18.) To date, Petitioner's direct appeal has not been perfected. (*Id.* ¶ 19.)

---

[3] Shortly after being appointed appellate counsel, Appellate Advocates sent Petitioner a letter on July 31, 2018, informing Petitioner that "[i]t generally takes anywhere from six to nine months . . . to receive the complete record on appeal." (Dkt. 8-15, at ECF 72.)

[4] Several exhibits were not provided because they contained child pornography, and one hearing exhibit was provided in redacted form. (Resp. Aff., Dkt. 8, ¶ 13.)

3

In May 2019, Petitioner became eligible for, but was denied, parole. (*Id.* ¶ 24 (citing Dkt. 8-14).) The parole board provided the following reasons for the denial of parole:

> A review of the record, a personal interview and deliberation lead this panel to conclude that there is a reasonable probability that if released at this time, you would not live and remain at liberty without again violating the law. Accordingly, parole is denied. Your instant offense of possessing a sexual performance by a child less than 16 years old represents your first NYS incarceration and the only conviction in your criminal history. Your case plan goals are positive and you are currently engaged in programs. The panel notes that you were removed from SOP counseling due to your refusal to admit to sex offending behavior as a result of the appeal of your conviction. Your disciplinary record is a concern. You have avoided serious violations but have accrued approximately 9 Tier 2 violations, which gives the panel concerns about your ability to follow the rules of society and while on parole. The COMPAS[5] risk assessment indicates low risk. However, due to the nature of the instant offense, the lack of programming to address the sex offending behavior and the concerns about your discipline noted above, the panel departs from the COMPAS. As such, your discretionary release at this time would be incompatible with the welfare of society.

(Dkt. 8-15, at ECF 11.) Petitioner's next parole hearing is scheduled to take place in January 2021.

(Resp. Aff., Dkt. 8, ¶ 50; *see also* Dkt. 8-15, at ECF 11.)

## II.    Collateral Proceedings

During the pendency of his direct appeal, Petitioner, acting *pro se*, has filed several collateral motions in both state and federal court. Notably, on June 12, 2019, Petitioner filed a *pro se* motion under New York Criminal Procedure Law ("CPL") § 460.50 in the state trial court to stay his conviction and be released either on his own recognizance or on bail pending appeal.[6]

---

[5] COMPAS stands for "Correctional Offender Management Profiling for Alternative Sanctions." *See* https://doccs.ny.gov/system/files/documents/2020/11/8500.pdf (last viewed 12/29/20); *see also Amaker v. Schiraldi*, No. 15-CV-4879 (CBA) (VMS), 2017 WL 4402443, at *3 (E.D.N.Y. Sept. 29, 2017).

[6] CPL § 460.50 provides in relevant part:

> Upon application of a defendant who has taken an appeal to an intermediate appellate court from a judgment or from a sentence of a criminal court, a judge designated in subdivision two may issue an order both (a) staying or suspending the execution of the judgment pending the determination of the appeal, and

4

(Dkt. 8-11.) The bail motion raised, among other issues, a statutory speedy-trial violation and ineffective assistance of trial counsel based on trial counsel's failure to impeach the state's witnesses, waiver of objections, and failure "to investigate whether Jewish-Americans were systematically or intentionally underrepresented in the jury wheel, the relevant jury pool, and the venire for [Petitioner's] trial." (*Id.* at ECF 5–12, 27–28.) The state opposed the motion. (Dkt. 8-14.) On October 30, 2019, the state trial court denied Petitioner's CPL § 460.50 motion in its entirety, concluding that it was "unlikely that [Petitioner's] conviction would be reversed on his appeal," based on the factors Petitioner raised. (Dkt. 8-17, at ECF 8.)

On July 8, 2019, Petitioner filed a *pro se* motion in the state trial court seeking to vacate his conviction under CPL § 440.10 based on a constitutional speedy trial violation.[7] (Dkt. 8-18.) On February 14, 2020, the state trial court denied the motion, holding that, upon "balancing all of the factors," Petitioner "was not deprived of his constitutional right to a speedy trial." (Dkt. 8-21, at ECF 6.) Petitioner applied for leave to appeal this decision in both the Appellate Division and the Court of Appeals. (Dkts. 8-22, 8-23.) The Court of Appeals denied leave in June 2020 (Dkt. 8-25), and the Appellate Division denied leave in July 2020 (Dkt. 8-26).

In August 2019, Petitioner petitioned for a state writ of habeas corpus,[8] which was ultimately denied. (*See* Pet'r. Aff., Dkt. 13, at ECF 5.) Additionally, it appears Petitioner has filed

---

  (b) either releasing the defendant on his own recognizance or fixing bail pursuant
  to the provisions of article five hundred thirty.

N.Y. Crim. P. Law § 460.50(1).

 [7] CPL § 440.10(1)(h) provides: "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that the judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States[.]" N.Y. Crim. P. Law § 440.10(1)(h).

 [8] New York Civil Practice Law and Rules provides that "[a] person illegally imprisoned or otherwise restrained in his liberty within the state . . . may petition without notice for a writ of

several other state habeas petitions in the past year, all of which have been denied. (*See* Respondent's Memorandum of Law ("Resp. Mem."), Dkt. 8-1, at 5 n.4.)

On September 30, 2019, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court. Petition, *Hayon v. Smith* (*Hayon I*), No. 19-CV-5545 (PKC) (E.D.N.Y. Sept. 30, 2019), ECF No. 1. By order on October 8, 2019, the Court *sua sponte* dismissed the petition without prejudice for failure to exhaust state remedies. Memorandum & Order at 3–4, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Oct. 8, 2019), ECF No. 3. Petitioner moved to amend the Court's judgment partly on the basis that the delay in Petitioner's state-court direct appeal excused his failure to exhaust. Motion to Amend Judgment, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Nov. 1, 2019), ECF No. 5. The Court denied Petitioner's motion, finding at that time that "the 20-month delay relating to his direct appeal [was] not so unreasonable so as to establish undue delay." Docket Order, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Dec. 9, 2019) (citing *Richard-Antonio v. O'Meara*, No. 12-CV-5174 (LAK) (SN), 2013 WL 5019395, at *8 (S.D.N.Y. May 21, 2013)). Petitioner filed a Notice of Appeal on January 21, 2020. Notice of Appeal, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Jan. 21, 2020), ECF No. 8. The Second Circuit dismissed the appeal for lack of jurisdiction because the Notice of Appeal was not timely filed. *See* Second Circuit Mandate, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Sept. 21, 2020), ECF No. 9.

### III. Current Proceedings and Motions

On September 25, 2020, Petitioner filed the present habeas petition in this case. (Dkt. 1.) The petition ostensibly raises four grounds for granting the writ: (1) denial of due process because

---

habeas corpus to inquire into the cause of such detention and for deliverance." N.Y. C.P.L.R. § 7002(a).

the state trial court denied Petitioner's motion for bail pending appeal without appointing him an attorney, which decision "was arbitrary" (*id.* at ECF 9); (2) violation of Petitioner's constitutional right to a speedy trial, as well as ineffective assistance of trial counsel because trial counsel "failed to properly argue the constitutional speedy trial claim" (*id.* at ECF 11); (3) violation of Petitioner's constitutional right to a speedy appeal (*id.* at ECF 15); and (4) an allegedly "unconstitutional jury wheel" because "[t]here were no Jews in the jury wheel," and "Brooklyn has a lot of Jews" (*id.* at ECF 17).[9]  The petition also purports to "reserve the ability to raise addition[al] grounds for relief since not all [of Petitioner's] claims are exhausted." (*Id.* at ECF 24.)  On October 19, 2020, the Court issued an order for Respondent to show cause within 60 days "why a writ of habeas corpus should not be issued."  (10/19/2020 Docket Order.)

On November 5, 2020, the Court received a motion from Petitioner styled as a motion for preliminary injunction, although the relief sought in the motion is bail of $1.00 pending determination of the habeas petition.  (Dkt. 5, at ECF 4.)  Therefore, the Court construes the motion as one for bail.

On November 9, 2020, the Court received from Petitioner a "motion to issue writ of habeas corpus forthwith pursuant to 28 U.S.C.A. § 2243." (Dkt. 6, at ECF 1.)  The same document also contains a motion for appointment of counsel under the CJA.  (*Id.* at ECF 3.)

On November 11, 2020, the Court ordered Respondent to respond to Petitioner's motion for preliminary injunction/bail within two weeks, and more specifically, to "update[e] the Court on the status of Petitioner's direct appeal before the state court and discuss[] whether any delay in those proceedings justifies granting Petitioner any relief." (11/11/2020 Docket Order.)  The Court also amended its October 19, 2020 Order to Show Cause to allow Respondent until January 15,

---

[9] Petitioner is an Orthodox Jew.  (*See* Pet'r. Aff., Dkt. 13, at ECF 6–7.)

2021, to file a return to the petition. (*Id.*) Respondent submitted an opposition to the motion for bail on November 20, 2020. (Dkt. 8.)

On December 14, 2020, the Court received several documents from Petitioner. First, the Court received a motion reiterating Petitioner's request for appointment of counsel under the CJA.[10] (Dkt. 12.) Second, the Court received an affirmation and memorandum of law in support of Petitioner's motion for bail. (Dkts. 13, 14.) In addition to replying to Respondent's opposition, Petitioner's memorandum makes several other requests—including that an evidentiary hearing be held to investigate his claim of appellate delay; that the City of New York, State of New York, and/or their agencies be ordered to amend any contract with Appellate Advocates so that Appellate Advocates is paid at least $150 per hour; and that Appellate Advocates accordingly be ordered to "hire more attorneys to accommodate their huge caseload." (Petitioner's Memorandum of Law ("Pet'r. Mem."), Dkt. 14, at ECF 1, 15.)

## DISCUSSION

### I. Motion for Bail

"[A] district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (quoting *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)). But such power is limited, "to be exercised in special cases only." *Id.* "The standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that 'the habeas petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Grune v. Coughlin*, 913 F.2d 41, 44

---

[10] This motion for appointment of counsel specifically names Attorney Gary Donoyan. (Dkt. 12, at ECF 1.) It appears Petitioner has spoken to Donoyan, who "said he would be willing to" represent Petitioner under the CJA. (*Id.*)

8

(2d Cir. 1990) (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981)); *accord Mapp*, 241 F.3d at 226; *see also Morrow v. Capra*, No. 18-CV-5765 (AMD) (LB), 2020 WL 3316017, at *2 (E.D.N.Y. June 17, 2020) ("To be eligible for bail, the petitioner must show: (1) that his petition makes 'substantial' claims, (2) that he has demonstrated a likelihood of success on the merits of his petition, and (3) that 'extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.'" (internal quotation marks and citations omitted)).

Petitioner's habeas petition raises four, possibly five, claims: (1) a due-process claim regarding the state trial court's denial of Petitioner's bail motion; (2) a constitutional speedy-trial claim, which appears also to include a potential ineffective-assistance-of-trial-counsel claim; (3) an appellate-delay claim; and (4) a claim of an "unconstitutional jury wheel" because of the lack of Jews. (Petition, Dkt. 1, at ECF 9–19.) It does not appear that all of these claims have been properly exhausted. (*See id.*) *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Nevertheless, "it is now clear in this circuit that substantial delay in the state criminal appeal process is a sufficient ground to justify the exercise of federal habeas jurisdiction." *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991) (collecting cases). Moreover, "the right to a reasonably timely appeal is included among the protections afforded by the due process clause when a state does provide for an appeal." *Id.* at 719 (citing *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990)); *see also Brooks v. Jones*, 875 F.2d 30, 32 (2d Cir. 1989) ("[F]ederal habeas review remains available to protect indigent prisoners' rights to appeal." (internal quotation marks and citation omitted)). Thus, an unreasonable delay in the state-court appellate process may not

only excuse a failure to exhaust but also in itself be a constitutional violation justifying federal habeas relief.

The Court need not—and does not—decide the merits of Petitioner's appellate-delay claim (or any other claim in the petition) at this juncture, because even assuming that Petitioner raises a substantial claim in his habeas petition, he has not demonstrated the existence of "extraordinary circumstances" that "make the grant of bail necessary to make the habeas remedy effective." *Grune*, 913 F.2d at 44 (quoting *Iuteri*, 662 F.2d at 161); *accord Mapp*, 241 F.3d at 226 (quoting *Ostrer*, 584 F.2d at 596 n.1). To start, Petitioner has not shown that his release on bail is necessary to make the habeas remedy effective, particularly with respect to his appellate-delay claim. *See Mapp*, 241 F.3d at 230–32 (vacating the district court's grant of bail because, even assuming there was a substantial claim for relief and the circumstances were extraordinary, the district court "neglected to articulate why its grant of bail was necessary to make the habeas remedy effective" (internal quotation and citation omitted)). With respect to Petitioner's appellate-delay claim, the Second Circuit has made clear that he would not be entitled to "unconditional release from custody" as a habeas remedy even if he proved undue appellate delay "unless [he could] demonstrate that appellate delay caused substantial prejudice to the disposition of his appeal." *Cody*, 936 F.2d at 719. In other words, to obtain unconditional habeas relief on his appellate-delay claim, the petitioner must show "there is a reasonable probability that, but for the delay, the result of the appeal would have been different." *Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir. 1991) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Absent such a showing of prejudice, a petitioner is at most entitled to a conditional writ, *see Cody*, 936 F.2d at 720, which is "an alternative writ that orders the state either to prosecute the appeal within a specified reasonable period of time, or to release the petitioner," *Simmons*, 898 F.2d at 869; *see also Roberites v. Colly*, 546 F. App'x 17,

10

21 (2d Cir. 2013) (summary order) (granting a conditional writ based on an appellate-delay claim without a finding of substantial prejudice, ordering the petitioner to be released unless his appeal was decided by a specified date). Because Petitioner here has provided no indication that the delay in his state court appeal is likely to prejudice its outcome, the only habeas relief he is likely entitled to is a conditional writ—*i.e.*, a direction to the state court to decide Petitioner's appeal by a certain date or release him—based on his claim of appellate delay. Petitioner's immediate release on bail is not necessary to make that habeas remedy effective.

The Court also does not find the circumstances in this case to be sufficiently "extraordinary" to warrant immediate release on bail. Petitioner argues that his case is extraordinary because of the delayed direct appeal; the "futility of the state courts" as shown by their "arbitrary decisions" and "misfiling of documents"; the "unconstitutional prison conditions" he allegedly faces, including a purported lack of sufficient accommodation for his Jewish faith, harassment by prison officials when he asks for or complains about religious accommodations, and detention in the Special Housing Unit (*i.e.*, solitary confinement) on 11 occasions in less than three years; the fact that he has served almost 75% of his maximum sentence of four years; his denial of parole in 2019 because of his refusal to talk about his conviction, given his pending direct appeal; and, finally, the "[l]ikelihood of success." (Pet'r. Mem., Dkt. 14, at ECF 12, 14; *see also* Petitioner's Supplement to Motion for Bail, Dkt. 7, at ECF 2–3; Pet'r. Aff., Dkt. 13, at ECF 6–7.)

The Court does not doubt that Petitioner has faced hardships in prison, but his allegations, either individually or in combination, do not demonstrate that this is one of the "special cases," *Mapp*, 241 F.3d at 226, where immediate release on bail is justified. As an initial matter, "a petitioner's continued confinement during habeas review is normally not considered an extraordinary circumstance entitling him to bail." *United States v. Callahan*, No. 13-CR-453 (S-

1) (ADS), 2019 WL 3457987, at *3 (E.D.N.Y. July 31, 2019) (collecting cases); *see also Iuteri*, 662 F.2d at 162 (reversing a grant of bail to habeas petitioner and noting that, because "[v]irtually all habeas corpus petitioners argue that their confinement is unlawful," there is "nothing unusual" about the possibility that a petitioner's incarceration will "have been without basis"). Additionally, "in general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances." *Montes v. James*, No. 20-CV-150 (TJM), 2020 WL 1302307, at *3 (N.D.N.Y. Mar. 19, 2020) (quoting *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005)). Nor is it necessarily extraordinary that Petitioner has almost completed his maximum sentence. *See United States v. Whitman*, 153 F. Supp. 3d 658, 661 (S.D.N.Y. 2015) (citing *Jackson v. Bennett*, No. 01-CV-8971 (NRB), 2002 WL 126679, at *1 (S.D.N.Y. Jan. 31, 2002)). Petitioner also argues that his delayed appeal has impacted his ability to be released on parole (*e.g.*, Dkt. 7, at ECF 3), but his 2019 parole decision cites several disciplinary violations as well as the nature of his instant offense as reasons for the denial (Dkt. 8-15, at ECF 11). In any event, "prisoners in New York possess no liberty interests in parole," and there is no indication that Petitioner's denial of parole was based on "arbitrary or constitutionally impermissible reasons" that would raise special concern. *See Renis v. Thomas*, No. 02-CV-9256 (DAB) (RLE), 2003 WL 22358799, at *4 (S.D.N.Y. Oct. 16, 2003) (internal quotation marks omitted) (citing, *inter alia*, *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001)).

Overall, upon careful consideration of all the circumstances of this case, the Court does not find that this is the rare, exceptional case where immediate release on bail is warranted, particularly when the Court also considers that immediate release is not necessary to make the habeas remedy

effective with regard to what appears to be Petitioner's strongest claim, his appellate-delay claim.[11] Accordingly, Petitioner's motion for bail is denied.

## II.     Motion to Issue Writ Forthwith

Petitioner moves for issuance of a writ of habeas corpus "forthwith" pursuant to 28 U.S.C. § 2243. (Dkt. 6, at ECF 1.) That statute provides, among other things, that a court "entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243 (paragraph 1). The statute requires a response from respondent "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (paragraph 2). Once respondent responds, "a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed." *Id.* (paragraph 4). "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.* (paragraph 8).

---

[11] Although the Court does not decide the likelihood of success of any claim in the petition at this time, the Court notes that some of Petitioner's claims other than the appellate-delay claim appear to have been rejected in some form by at least one state court. For example, in denying Petitioner's CPL § 440.10 motion, the state trial court rejected claims of a constitutional speedy-trial violation and ineffective assistance of counsel. (Dkt. 8-21, at ECF 3–8.) Additionally, in denying Petitioner's CPL § 460.50 bail motion, the state trial court rejected a claim that trial counsel was ineffective for not objecting to the composition of the jury wheel. (Dkt. 8-17, at ECF 5–6.) With respect to any claim in Petitioner's habeas petition "that was adjudicated on the merits in State court proceedings," the Court may not grant habeas relief on that claim unless its adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

However, as courts in this district have observed, "[o]beying the explicit directives of section 2243 is not possible." *In re Habeas Corpus Cases*, 216 F.R.D. 52, 54 (E.D.N.Y. 2003); *see also Kalu v. New York*, No. 08-CV-4984 (NGG), 2009 WL 7063100, at *4 (E.D.N.Y. Sept. 15, 2009) ("[B]oth Congress and federal courts have recognized the impracticability of [section 2243], and the necessity for greater flexibility in determining the time period in which an answer must be made." (citations omitted)), *report and recommendation adopted sub nom. Ndukwe v. New York*, 2010 WL 4386680, at *1 (E.D.N.Y. Oct. 28, 2010).  Indeed, Petitioner has acknowledged as much.  (Dkt. 6, at ECF 1 (noting that "it is practically impossible to comply" with the literal dictates of 28 U.S.C. § 2243).)  Because Petitioner's case is proceeding as expeditiously as possible, the Court denies the motion for issuance of the writ forthwith.

### III.  Motion for Appointment of Counsel

"[T]here is no constitutional right to representation by counsel in habeas corpus proceedings." *Green v. Abrams*, 984 F.2d 41, 47 (2d Cir. 1993) (internal quotation marks and citations omitted).  Nevertheless, a court may appoint counsel to a financially eligible habeas petitioner under the CJA when "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  Counsel must be appointed "if necessary for effective discovery" or "if an evidentiary hearing is warranted," but "appointment is otherwise discretionary."  *Carter v. Fields*, 19-CV-5364 (PKC), 2020 WL 5819899, at *18 (E.D.N.Y. Sept. 29, 2020) (citing *Villafane v. Artus*, 09-CV-5545 (SJF), 2011 WL 6835029, at *27 (E.D.N.Y. Nov. 17, 2011)); *see also* Rules Governing § 2254 Cases, Rules 6(a), 8(c).

Given the nature of Petitioner's habeas claims, the Court finds that counsel is not necessary for effective discovery in this case, and that, as discussed below, an evidentiary hearing is not warranted.  Accordingly, the Court applies the standard set forth in *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), to determine whether discretionary appointment of counsel is merited.  *See*

14

*Thompson v. Griffin*, No. 14-CV-1641 (DLI), 2017 WL 11511164, at *1 (E.D.N.Y. Mar. 16, 2017) ("In deciding whether to appoint counsel for a habeas corpus petitioner, the Court utilizes the standard set forth by the Second Circuit Court of Appeals for determining whether to appoint counsel to indigent civil litigants under 28 U.S.C. § 1915." (citation omitted)). Under this standard, "the district judge should first determine whether the indigent's position seems likely to be of substance." *Hodge*, 802 F.2d at 61. If this threshold showing is satisfied, the Court then considers several factors: (1) the petitioner's "ability to investigate the crucial facts"; (2) "whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder"; (3) the petitioner's "ability to present the case"; (4) "the complexity of the legal issues"; and (5) "any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Id.* at 61–62.

      Even assuming that Petitioner has at least one claim—his appellate-delay claim—that is likely to be of substance, the other factors, on balance, do not weigh in favor of appointing counsel. The issue of appellate delay is discrete and not particularly complex either factually or legally, and Petitioner has so far demonstrated an ability to present the issues competently. Additionally, the state-court record, for the most part, speaks for itself, and the issues do not appear to turn on questions of credibility or conflicting evidence that implicate the need for cross-examination. Lastly, appointing counsel will inevitably delay the proceedings, in direct contravention of Petitioner's apparent desire to move the proceedings along expeditiously in light of the remaining length of his sentence. In short, the Court is unconvinced that appointing counsel in this case, and at this point, will lead to a more just result. The motion for appointment of counsel is accordingly denied.

**IV.     Other Requests**

Finally, the Court addresses several requests made in Petitioner's Memorandum of Law supporting his bail motion and replying to Respondent's opposition. (Dkt. 14.) Most notably, Petitioner requests an evidentiary hearing to investigate his claim of appellate delay, asserting that such delays are "systemic." (*Id.* at ECF 15.) The Court has an obligation to determine whether the materials submitted warrant an evidentiary hearing. Rules Governing § 2254 Cases, Rule 8(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if a petitioner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may not hold an evidentiary hearing on the claim except in very narrow circumstances. *See* 28 U.S.C. § 2254(e)(2). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is [a] lack [of] diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000); *accord Fulton v. Graham*, 802 F.3d 257, 266 (2d Cir. 2015). Given that the record does not show a lack of diligence attributable to Petitioner with respect to his claim of appellate delay, the AEDPA does not bar an evidentiary hearing on that claim. Nevertheless, the Court finds that an evidentiary hearing is unwarranted, particularly because there do not appear to be any facts in dispute that would require a hearing, and Petitioner provides no basis to find that a hearing is needed. Thus, the request for an evidentiary hearing is denied.

Petitioner also requests a declaration that the state corrective process is "ineffective" under 28 U.S.C. § 2254(b)(1)(B(ii) and that his failure to exhaust is excused. (Dkt. 14, at ECF 1.) The Court need not, and does not, decide that issue at this juncture. Furthermore, Petitioner requests that in the event his state trial court conviction is ultimately affirmed, he be able to serve the remainder of his sentence on parole. (*Id.*) Petitioner points to no authority that authorizes the Court to grant such relief, and the Court denies that request.

16

Finally, Petitioner requests that the City and State of New York and/or their agencies be ordered to amend any contract with Appellate Advocates so that the organization is paid at least $150 per hour, and Appellate Advocates accordingly be ordered to "hire more attorneys to accommodate their huge caseload." (*Id.*)  To be sure, indigent persons may not be "singled out by the State and denied meaningful access to the appellate system because of their poverty." *Ross v. Moffit*, 417 U.S. 600, 611 (1974); *see also Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."). But Petitioner provides no evidence that he, or any other indigent person, has been singled out by the State and purposefully denied meaningful access to the appellate system.  Nor does the Court have a basis to conclude that the remedy requested is in any way warranted or appropriate, or that the Court has the authority to grant such relief.  The request is therefore denied.

## V.     Certificate of Appealability

The denial of bail pending determination of a habeas petition is appealable under the collateral order doctrine, but a certificate of appealability under 28 U.S.C. § 2253 is required. *Grune*, 913 F.2d at 44.  Given the Court's determination that Petitioner, at best, might be entitled to a conditional writ as habeas relief in this matter, the Court declines to issue a certificate of appealability.  The Court does not find that reasonable jurists could debate that the motion for bail "should have been resolved in a different manner" or that it raises issues "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

## CONCLUSION

Petitioner's motion for preliminary injunction, which the Court has construed as a motion for bail pending the determination of his habeas petition, is denied.  The motion for issuance of the writ forthwith is denied.  The motion for appointment of counsel under the Criminal Justice

17

Act, 18 U.S.C. § 3006A, is denied, and the requests in Petitioner's Memorandum of Law supporting his bail motion, including the request for an evidentiary hearing, are denied.  No certificate of appealability with respect to the denial of the motion for bail shall issue.

The Court defers ruling on the merits of Petitioner's habeas claims until they have been fully briefed.  Pursuant to the Court's November 11, 2020 Order, Respondent shall have until January 15, 2021, to file a return to the petition, serve a copy of the return on Petitioner, and file the original with the Court along with proof of service.  Petitioner shall have twenty-one (21) days from receipt of a copy of the return to file a reply, if any.  The parties in their filings may submit any additional evidence bearing on the issue of appellate delay, particularly the reason for such delay.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 4, 2021
        Brooklyn, New York