UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JOSEPH HAYON,

                      Petitioner,

          - against -

PATRICK REARDON,

                    Respondent.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4668 (PKC)

PAMELA K. CHEN, United States District Judge:

Petitioner Joseph Hayon, currently in state custody and proceeding *pro se*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons below, the petition is denied.

## BACKGROUND

### I.      State Court Trial and Direct Appeal Proceedings

On May 22, 2015, Petitioner was arraigned on a felony complaint for possession of a sexual performance by a child, in violation of New York Penal Law § 263.16.  (Respondent's Affirmation Opposing Habeas Petition ("Resp. Aff."), Dkt. 17, ¶ 7.)[1]  Petitioner was released on bail of $50,000 on the following day.  (*Id.*; *see also* Affirmation in Support of Motion to Dismiss the Indictment, Dkt. 17-3, at ECF[2] 4–5.)  On October 20, 2015, the grand jury returned an indictment charging

---

[1]  Petitioner states that, "[u]nless otherwise indicated," he "admit[s] to the facts set forth" by Respondent.  (Petitioner's Reply ("Pet'r Reply"), Dkt. 20, at ECF 1.)  Thus, except where otherwise noted, a standalone citation to Respondent's affirmation (Dkt. 17) indicates that the fact is undisputed.  Any citation to Respondent's affirmation incorporates by reference the documents cited therein; however, where relevant, particularly where Petitioner appears to dispute Respondent's recitation of the facts, the Court may cite directly to an underlying document or another document in the state court record.  Any factual issue determined by the state court is presumed to be correct, unless rebutted by "clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1).

[2]  Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Petitioner with 65 counts of possessing a sexual performance by a child in violation of New York Penal Law § 263.16, as well as eight counts of promoting a sexual performance by a child in violation of New York Penal Law § 263.15. (Resp. Aff., Dkt. 17, ¶ 11.) On the same day, the prosecution filed a statement of readiness for trial. (*Id.*; *see also* 10/20/2015 Statement of Readiness for Trial, Dkt. 17-7, at ECF 23.) On November 12, 2015, Petitioner was arraigned on the indictment, and the prosecution confirmed that it was ready for trial. (Resp. Aff., Dkt. 17, ¶ 12.) The case, however, was adjourned to allow grand jury minutes to be prepared for the trial court's inspection. (*Id.*)

On January 7, 2016, Petitioner moved to controvert the search warrants executed in the case and to suppress the evidence recovered pursuant to the warrants. (*Id.* ¶ 13.) The prosecution opposed the motion on February 4, 2016, and Petitioner replied on February 23, 2016. (*Id.* ¶¶ 15–16.) On March 10, 2016, the trial court indicated that it had not been provided copies of the search warrants and would need more time to decide the motion. (*Id.* ¶ 17.)

While Petitioner's motion to controvert the search warrants was pending, the grand jury returned a superseding indictment on April 1, 2016, charging Petitioner with 30 additional counts—*i.e.*, 95 total counts—of possessing a sexual performance by a child and eight counts of promoting a sexual performance by a child. (*Id.* ¶ 18.) The prosecution filed a statement of readiness for trial along with the superseding indictment. (*Id.*; *see also* 4/1/2016 Statement of Readiness for Trial, Dkt. 17-14, at ECF 30.) Petitioner was arraigned on the superseding indictment on April 18, 2016, and the original indictment was dismissed. (Resp. Aff., Dkt. 17, ¶ 19.) After receiving and reviewing the grand jury minutes, the trial court dismissed the eight promotion charges based on inaccurate legal instructions, as well as one of the possession charges because of insufficient evidence. (*See id.* ¶¶ 22–23; *see also* Decision and Order, Dkt. 17-19.)

On June 29, 2017, while the motion to controvert the search warrants remained pending, the case had to be reassigned to another trial judge because the assigned judge became ill and could not return to the bench for an extended period.  (Resp. Aff., Dkt. 17, ¶ 28.)  On September 25, 2017, the trial court held a suppression hearing, and on October 2, 2017, the court denied Petitioner's motion to controvert the search warrants.  (*Id.* ¶¶ 30–31.)

Meanwhile, on September 15, 2017, Petitioner filed a motion to dismiss the indictment based on an alleged statutory speedy trial violation under New York Criminal Procedure Law ("CPL") § 30.30.[3]  (*Id.* ¶ 29.)  By decision and order dated November 8, 2017, the trial court denied the motion, finding no statutory speedy trial violation.  (*Id.* ¶ 33; *see also* Decision and Order, Dkt. 17-2, at ECF 2–4 (finding that the prosecution was charged with 131 days in total and that Petitioner's "right to a speedy trial under CPL § 30.30 [accordingly] has not been violated").)

The case then proceeded to a jury trial.  The jury convicted Petitioner of the 94 remaining counts of possession of a sexual performance by a child.  (Resp. Aff., Dkt. 17, ¶ 35.)  On January 31, 2018, the trial court sentenced Petitioner to 1⅓–4 years' incarceration on all counts, to be served concurrently.  (*Id.* ¶ 36.)  On the same day, the state trial court granted Petitioner's application for poor person relief on appeal.  (*Id.*; *see also* Order Granting Poor Person Relief on Appeal, Dkt. 17-32, at ECF 2.)

One day later, on February 1, 2018, Petitioner, through his trial counsel, filed a Notice of Appeal.  (Resp. Aff., Dkt. 17, ¶ 37; *see also* Notice of Appeal, Dkt. 17-33, at ECF 2–3.)  However,

---

[3]  Under CPL § 30.30, a court must dismiss an indictment if the defendant is accused of a felony and the prosecution is not ready for trial within six months of the commencement of the case.  *See* N.Y. Crim. Proc. Law § 30.30(1)(a).  In computing the time from the commencement of the case, "a reasonable period of delay resulting from other proceedings concerning the defendant"—including "pre-trial motions" and "the period during which such matters are under consideration by the court"—is excluded.  *See id.* § 30.30(4)(a).

because Petitioner's trial counsel improperly filed the Notice of Appeal, the Appellate Division, Second Department ("Appellate Division"), did not open a case file and assign a docket number until June 11, 2018.  (*See* Resp. Aff., Dkt. 17, ¶ 38; Petitioner's Affirmation Supporting Motion for Preliminary Injunction ("Pet'r Aff."), Dkt. 13, at ECF 7.)[4]  One month later, on July 11, 2018, the Appellate Division assigned Appellate Advocates, a non-profit public defender organization, to represent Petitioner on direct appeal, and ordered that transcripts of the pre-trial hearing, jury selection, trial, and sentencing be produced.  (Resp. Aff., Dkt. 17, ¶ 39.)  After these transcripts were produced,[5] Appellate Advocates submitted a request to the Kings County District Attorney ("KCDA") on May 16, 2019 for exhibits from Petitioner's suppression hearing and trial.  (*Id.* ¶ 40.) This request was effectively fulfilled by November 7, 2019.[6]  (*Id.*)

While the request for exhibits was pending, Appellate Advocates filed a motion with the Appellate Division on September 16, 2019, to enlarge the appellate record to include transcripts from 11 additional pre-trial proceedings, arguing that speedy-trial issues had been litigated below and transcripts from such proceedings were "necessary to the appeal."  (*See id.* ¶ 41; Affirmation in Support of Motion to Enlarge Appellate Record, Dkt. 17-37, at ECF 5.)  Appellate counsel

---

[4]  Petitioner has admitted that his trial attorney improperly filed the Notice of Appeal with the Appellate Division instead of with the trial court, but maintains that "the Appellate Division clerk . . . should have notified my attorney that [the Notice of Appeal] was improperly filed." (Pet'r Aff., Dkt. 13, at ECF 7.)  Additionally, according to Petitioner, he recently realized that this was the reason for the delay in having a case file opened and docket number assigned.  (*Id.*)  It seems that at the time of these events in 2018, Petitioner was simply aware that there was a delay and began inquiring, through a friend, about when he would be appointed appellate counsel.  (*Id.* at ECF 2; *see also* Affirmation of Odelia Cohen, Dkt. 15.)

[5]  Shortly after being appointed appellate counsel, Appellate Advocates sent Petitioner a letter on July 31, 2018, informing Petitioner that "[i]t generally takes anywhere from six to nine months . . . to receive the complete record on appeal."  (Dkt. 8-15, at ECF 72.)

[6]  Several exhibits were not provided because they contained child pornography, and one hearing exhibit was provided in redacted form.  (Resp. Aff., Dkt. 17, ¶ 40.)

averred that they "[could not] adequately represent or advise" Petitioner without the additional records. (Affirmation in Support of Motion to Enlarge Appellate Record, Dkt. 17-37, at ECF 6.) Petitioner, on his own, filed a supplemental affidavit on September 22, 2019, in support of the motion to enlarge the record. (Resp. Aff., Dkt. 17, ¶ 42.) Petitioner's supplemental affidavit was rejected because he was represented by counsel. (Pet'r Aff., Dkt. 13, at ECF 3, 18–19; *see also* Resp. Aff., Dkt. 17, ¶ 42 n.4.) The State took no position on the motion. (Resp. Aff., Dkt. 17, ¶ 43.) Several months later, on January 13, 2020, the Appellate Division issued a decision and order granting the motion to enlarge the appellate record and directing the stenographer of the trial court to certify and file copies of transcripts from the additional pre-trial proceedings "within 45 days of the date of this decision and order." (*See id.* ¶ 44; Decision & Order, Dkt. 17-40, at ECF 2.) These additional transcripts, however, were not prepared until September 30, 2020. (Resp. Aff., Dkt. 17, ¶ 45.)

To date, Petitioner's direct appeal has not been perfected. (*Id.* ¶ 46.) The current delay appears to be attributable to time Petitioner's appellate counsel is taking to perfect his appeal. (*See id.* ¶ 47.) As Petitioner confirmed in a recent filing in this case, his "direct appeal lawyer didn't start perfecting my appeal yet" (Emergency Bail Motion, Dkt. 28, at ECF 6), and may still "need to file a new motion for grand jury transcripts and all pretrial transcripts[, as well as] the original file that caused the state judge to issue a warrant" (Pet'r Reply, Dkt. 20, at ECF 5).[7] Petitioner's maximum sentence of four years, which he will serve, expires in January 2022. (*See* Resp. Aff., Dkt. 17, ¶ 81 n.6.)

---

[7] During the course of proceedings in this Court, Petitioner has described his appellate counsel as "[g]reat" and "[w]onderful. (Petitioner's Memorandum of Law in Support of Preliminary Injunction ("Pet'r Mem."), Dkt. 14, at ECF 6–7.)

## II.      Collateral Proceedings

During the pendency of his direct appeal, Petitioner, acting *pro se*, has filed several collateral motions in both state and federal court.  First, on June 12, 2019, Petitioner filed a *pro se* motion under CPL § 460.50 in the state trial court to stay his conviction and be released either on his own recognizance or on bail pending appeal.[8]  (*Id.* ¶ 48; *see also* CPL § 460.50 Bail Motion ("460.50 Mot."), Dkt. 17-41, at ECF 2.)  The bail motion raised, among other issues, a statutory speedy-trial violation and ineffective assistance of trial counsel based on trial counsel's failure to impeach the state's witnesses, waiver of objections, and "failure to investigate whether Jewish-Americans were systematically or intentionally underrepresented in the jury wheel, the relevant jury pool, and the venire for [Petitioner's] trial." (460.50 Mot., Dkt. 17-41, at ECF 5–12, 27–28.) The state opposed the motion.  (Resp. Aff., Dkt. 17, ¶ 51.)  On October 30, 2019, without a hearing, the state trial court denied Petitioner's CPL § 460.50 motion in its entirety, concluding that it was "highly unlikely that [Petitioner's] conviction would be reversed on his appeal" based on the factors Petitioner raised.  (Decision and Order on CPL § 460.50 Motion ("460.50 Order"), Dkt. 17-47, at ECF 8.)

Next, on July 8, 2019, Petitioner filed a *pro se* motion in the state trial court seeking to vacate his conviction under CPL § 440.10 based on a constitutional speedy trial violation and

---

[8]  CPL § 460.50 provides in relevant part:

> Upon application of a defendant who has taken an appeal to an intermediate appellate court from a judgment or from a sentence of a criminal court, a judge designated in subdivision two may issue an order both (a) staying or suspending the execution of the judgment pending the determination of the appeal, and (b) either releasing the defendant on his own recognizance or fixing bail pursuant to the provisions of article five hundred thirty.

N.Y. Crim. Proc. Law § 460.50(1).

defense counsel's failure to argue this issue.[9]  (Resp. Aff., Dkt. 17, ¶ 55; *see also* CPL § 440.10 Motion to Vacate ("440.10 Mot."), Dkt. 17-48, at ECF 2, 5–11.)  On February 14, 2020, the state trial court denied the motion.  (Resp. Aff., Dkt. 17, ¶ 58; *see also* Decision and Order on CPL § 440.10 Motion ("440.10 Order"), Dkt. 17-51, at ECF 8.)

In analyzing Petitioner's constitutional speedy trial claim, the state court examined the five factors established in *People v. Taranovich*, 335 N.E.2d 303, 306 (N.Y. 1975):

> (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay.

(440.10 Order, Dkt. 17-51, at ECF 3.)  Specifically, the state court determined that "[m]ost of the adjournments in this case were for motion practice, inspection of the grand jury minutes and discovery, which are for the defendant's benefit," and therefore, the length and reason for the delay did "not support the defendant's constitutional speedy trial violation claim."  (*Id.* at ECF 5.)  As for the nature of the charges, the state court noted that Petitioner's crimes "were numerous and serious" and that "the prosecutor may understandably be more thorough and precise in his preparation."  (*Id.*)  Petitioner's release on bail pending trial also cut against finding a speedy trial violation.  (*Id.*)  Finally, the state court found that Petitioner suffered "no prejudice" from any delay.  (*See id.* at ECF 6.)  Upon "balancing all of the factors," the state court concluded that Petitioner "was not deprived of his constitutional right to a speedy trial."  (*Id.*)  The state court also determined that "the record reveals that [Petitioner] did, in fact, receive effective and meaningful

---

[9]  CPL § 440.10(1)(h) provides: "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that . . . [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States[.]"  N.Y. Crim. Proc. Law § 440.10(1)(h).

assistance of counsel," noting that defense counsel "filed appropriate pre-trial motions."  (*Id.* at ECF 8.)  The state court accordingly rejected Petitioner's claim of ineffective assistance of counsel.  (*Id.*)  Petitioner applied for leave to appeal the state court's decision in both the Appellate Division and the Court of Appeals.  (Resp. Aff., Dkt. 17, ¶ 59.)  The Court of Appeals denied leave in June 2020 (Dkt. 17-55), and the Appellate Division denied leave in July 2020 (Dkt. 17-56).

Then, in August 2019, Petitioner petitioned for a state writ of habeas corpus,[10] which was ultimately denied.  (*See* Pet'r Aff., Dkt. 13, at ECF 5.)  Additionally, it appears Petitioner filed several other state habeas petitions in 2020, all of which were denied.  (*See* Respondent's Memorandum of Law Opposing Habeas Petition ("Resp. Mem."), Dkt. 17-1, at 4 n.8 (referring to Respondent's Memorandum of Law Opposing Motion for Preliminary Injunction, Dkt. 8-1, at 5 n.4).)

On September 30, 2019—notwithstanding his yet-unperfected state-court appeal and continuing failure to exhaust—Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court.  Petition, *Hayon v. Smith* (*Hayon I*), No. 19-CV-5545 (PKC) (E.D.N.Y. Sept. 30, 2019), ECF No. 1.  By order on October 8, 2019, the Court *sua sponte* dismissed the petition without prejudice for failure to exhaust state remedies.  Memorandum & Order at 3–4, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Oct. 8, 2019), ECF No. 3.  Petitioner moved to amend the Court's judgment partly on the basis that the delay in Petitioner's state-court direct appeal excused his failure to exhaust.  Motion to Amend Judgment, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Nov. 1, 2019), ECF No. 5.  The Court denied Petitioner's motion, finding

---

[10]  New York Civil Practice Law and Rules provides that "[a] person illegally imprisoned or otherwise restrained in his liberty within the state . . . may petition without notice for a writ of habeas corpus to inquire into the cause of such detention and for deliverance."  N.Y. C.P.L.R. § 7002(a).

at that time that "the 20-month delay relating to his direct appeal [was] not so unreasonable so as to establish undue delay."  Docket Order, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Dec. 9, 2019) (citing *Richard-Antonio v. O'Meara*, No. 12-CV-5174 (LAK) (SN), 2013 WL 5019395, at *8 (S.D.N.Y. May 21, 2013), *report and recommendation adopted*, 2013 WL 5049065, at *1 (S.D.N.Y. Sept. 13, 2013)).  Petitioner filed a Notice of Appeal on January 21, 2020.  Notice of Appeal, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Jan. 21, 2020), ECF No. 8.  The Second Circuit dismissed the appeal for lack of jurisdiction because the Notice of Appeal was not timely filed.  *See* Second Circuit Mandate, *Hayon I*, No. 19-CV-5545 (PKC) (E.D.N.Y. Sept. 21, 2020), ECF No. 9.

## III.    Current Proceedings

On September 3, 2020, Petitioner filed the present habeas petition in this case.[11]  (Petition, Dkt. 1.)  The Petition ostensibly raises four grounds for granting the writ: (1) denial of due process because the state trial court denied Petitioner's motion for bail pending appeal without appointing him an attorney and the decision "was arbitrary" (*id.* at ECF 9); (2) violation of Petitioner's constitutional right to a speedy trial, as well as ineffective assistance of trial counsel because trial counsel "failed to properly argue the constitutional speedy trial claim" (*id.* at ECF 11); (3) violation of Petitioner's constitutional right to a speedy appeal (*id.* at ECF 15); and (4) an allegedly "unconstitutional jury wheel" because "[t]here were no Jews in the jury wheel," and "Brooklyn

---

[11]  Under the "prison mailbox" rule, which has been extended to *pro se* habeas petitions, the date of filing of a document is the date on which the document is given to prison officials.  *See Noble v. Kelly*, 246 F.3d 93, 97–98 (2d Cir. 2001) (per curiam).  Here, Petitioner signed the Petition and mailed it to a friend to file on his behalf on September 3, 2020.  (Petition, Dkt. 1, at ECF 25.)  The Petition was received by the Court and electronically docketed on September 25, 2020.  (*Id.* at ECF 1.)

9

has a lot of Jews" (*id.* at ECF 17).[12]   The Petition also seeks to "reserve the ability to raise addition[al] grounds for relief since not all [of Petitioner's] claims are exhausted."  (*Id.* at ECF 24.)  On October 19, 2020, the Court issued an order for Respondent to show cause within 60 days "why a writ of habeas corpus should not be issued."  (10/19/2020 Docket Order.)

On November 5, 2020, the Court received a motion from Petitioner styled as a motion for preliminary injunction, which requested bail of $1.00 pending determination of the Petition.  (Dkt. 5, at ECF 4.)  On November 11, 2020, the Court ordered Respondent to respond to Petitioner's motion for bail and, at the same time, amended its October 19, 2020 Order to Show Cause to allow Respondent until January 15, 2021, to file a return to the Petition.  (11/11/2020 Docket Order.) Respondent submitted an opposition to the motion for bail on November 20, 2020.  (Respondent's Affirmation Opposing Motion for Preliminary Injunction, Dkt. 8.)  During this time, the Court received several additional filings from Petitioner requesting various relief—including a motion "to issue writ of habeas corpus forthwith pursuant to 28 U.S.C.A. [§] 2243" (*see* Dkt. 6), motions for appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (*see* Dkts. 6, 12), and a request for an evidentiary hearing (*see* Dkt. 14, at ECF 15).

By Memorandum and Order dated January 4, 2021, the Court denied Petitioner's motion for bail pending the determination of his habeas petition, as well as his other various requests ("January 4 Order").  *See Hayon v. Reardon* (*Hayon I*), No. 20-CV-4668 (PKC), 2021 WL 25365, at *4–9 (E.D.N.Y. Jan. 4, 2021).

---

[12]  Petitioner is an Orthodox Jew.  (*See* Pet'r Aff., Dkt. 13, at ECF 6–7; *see also* 460.50 Mot., Dkt. 17-41, at ECF 11.)

Following the January 4 Order, Respondent filed and served a return to the Petition on January 14, 2021, in accordance with the Court's amended Order to Show Cause.  (Dkt. 17.)  Petitioner replied on February 3, 2021.[13]  (Dkt. 20.)

Separately, by letter dated January 20, 2021, Petitioner moved for reconsideration of the January 4 Order.[14]  (*See generally* Motion for Reconsideration, Dkt. 21.)  On May 25, 2021, the Court received an "Emergency Motion for Bond/Bail," which reiterated arguments raised in Petitioner's reconsideration motion.  (*See generally* Emergency Bail Motion, Dkt. 28.)   By Memorandum and Order dated June 1, 2021 ("June 1 Reconsideration Order"), the Court denied both the reconsideration and "emergency" bail motions.  *Hayon v. Reardon* (*Hayon II*), No. 20-CV-4668 (PKC), 2021 WL 2206611, at *1–3 (E.D.N.Y. June 1, 2021).  On June 21, 2021, a Notice of Appeal was docketed with respect to the January 4 and June 1 Orders.  (*See* Dkt. 30.)  Although Petitioner's interlocutory appeal of the Court's bail determination is still pending, the Court retains jurisdiction—and finds it appropriate—to decide the merits of Petitioner's habeas petition.  *See Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) (per curiam) ("Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, jurisdiction is retained where, as here, the appeal is from an order granting or denying a preliminary injunction."); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir.

---

[13]  Petitioner filed two substantially similar replies.  The first—which was received on February 3, 2021, and electronically docketed on February 9, 2021—is not dated or signed.  (*See generally* Dkt. 19.)  The second—which was received on February 15, 2021, and electronically docketed on February 19, 2021—is signed and dated February 3, 2021.  (*See* Dkt. 20, at ECF 1, 10.)  Accordingly, the Court deems Petitioner's reply to be timely filed on February 3, 2021.  Although the two replies are substantially similar, the first (undated) reply attaches several exhibits not included in the second reply.  The Court herein cites primarily to the signed and dated reply but has considered the exhibits attached to Petitioner's undated reply.

[14]  The Court received the motion for reconsideration on February 15, 2021, and it was electronically docketed on February 18, 2021.  (*See* Dkt. 21, at ECF 1.)

1989) ("[W]hen the judgment appealed from does not determine the entire action, . . . the district court may proceed with those matters not involved in the appeal."); *see also Grune v. Coughlin*, 913 F.2d 41, 43–44 (2d Cir. 1990) (holding that an order denying bail pending habeas review is an appealable collateral order because "[t]he relief sought by a bail motion is not the same as the ultimate relief ordinarily sought by a habeas petition").

## DISCUSSION

## I.    Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") constrains review of state-court decisions in habeas proceedings.  Under AEDPA, a claim that was "adjudicated on the merits" in the state court may not serve as a basis for habeas relief unless its adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A claim is "adjudicated on the merits" in the state court if the state court "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment."  *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have "independent meaning."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court cases, or (2) decides a case differently from the Supreme Court given "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  A state-court decision involves an "unreasonable application" of clearly established federal law if it (1) correctly identifies the governing legal rule but "unreasonably applies it" to the instant case, or (2) "either

unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.  An unreasonable application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).  Where, however, a claim has not been adjudicated on the merits in the state court, "AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*." *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

In addition to the limitations imposed by AEDPA, a federal court may not grant habeas relief to a prisoner in state custody unless the prisoner has exhausted state-court remedies. *See* 28 U.S.C. § 2254(b)(1); *see also Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) ("If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]" (internal quotation marks and citation omitted)).  This exhaustion requirement includes two parts.  First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (emphasis omitted) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).  In New York, this means a habeas petitioner must first appeal the relevant conviction to the Appellate Division, and then seek further review by applying to the Court of Appeals for a certificate granting leave to appeal. *Id.* at 74 (citing, *inter alia*, *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).  Second, habeas petitioners must have "'*fairly presented* [their] claims to the state courts,' such that the state

court had a fair opportunity to act." *Id.* at 73 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Aparicio*, 269 F.3d at 89–90 ("To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." (internal quotation marks and citations omitted)).

The statute, however, provides some circumstances where a federal court may reach the merits of a habeas petition notwithstanding the petitioner's failure to exhaust state-court remedies. First and foremost, a habeas petition "may be denied on the merits, notwithstanding the failure of the [petitioner] to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Additionally, the exhaustion requirement may be excused if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the [petitioner]." *Id.* § 2254(b)(1)(B).

Finally, because Petitioner in this case is *pro se*, the Court liberally construes the Petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis and citation omitted). At the same time, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Id.* at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *accord O'Neal v. New York*, 465 F. Supp. 3d 206, 216 (E.D.N.Y. 2020).

## II.    Analysis

Liberally construed, Petitioner's habeas petition raises four, possibly five, claims: (1) a due-process claim regarding the state trial court's denial of Petitioner's motion for bail pending appeal; (2) a constitutional speedy-trial claim, which appears also to include a potential ineffective-assistance-of-trial-counsel claim; (3) an appellate-delay claim; and (4) a claim of an "unconstitutional jury wheel" because of the purported lack of Jewish people. (Petition, Dkt. 1, at ECF 9–19.)

14

The Court begins with the appellate-delay claim, as it appears to be Petitioner's strongest claim. *See Hayon I*, 2021 WL 25365, at *6 & n.11; *see also Hayon II*, 2021 WL 2206611, at *1. Additionally, if meritorious, the appellate-delay claim may be grounds to excuse a failure to exhaust state-court remedies. *See Hayon I*, 2021 WL 25365, at *5.

### A.    Appellate Delay

As the Second Circuit established three decades ago, "it is now clear in this circuit that substantial delay in the state criminal appeal process is a sufficient ground to justify the exercise of federal habeas jurisdiction." *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991) (collecting cases). Moreover, "the right to a reasonably timely appeal is included among the protections afforded by the due process clause when a state does provide for an appeal." *Id.* at 719 (citing *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990)); *see also Brooks v. Jones*, 875 F.2d 30, 32 (2d Cir. 1989) ("[F]ederal habeas review [remains] available to protect indigent prisoners' rights to appeal." (alteration in original) (quoting *Mathis v. Hood*, 851 F.2d 612, 615 (2d Cir. 1988))); *Roberites v. Colly*, 546 F. App'x 17, 19–21 (2d Cir. 2013) (summary order) (granting conditional relief based on a claim of appellate delay, whereby petitioner would be released unless his appeal was decided by a certain date); *cf. Tripathy v. Schneider*, 473 F. Supp. 3d 220, 232–34 (W.D.N.Y. 2020) (noting that "it appears to be an unsettled question in this Circuit whether a due process claim based on the denial of the right to a speedy appeal is cognizable in a federal habeas proceeding following the enactment of the [AEDPA]," but stating that the Second Circuit's decision in *Roberites* "suggests that it may be"). Thus, an unreasonable delay in the state-court appellate process may not only excuse a failure to exhaust state-court remedies but also in itself be a constitutional violation.

In assessing both whether appellate delay excuses a failure to exhaust and whether it is a constitutional violation, courts in this circuit use the four-factor balancing test set forth in *Barker*

*v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reason for the delay; (3) whether the petitioner asserted the right; and (4) prejudice to the petitioner.  *See Roberites*, 546 F. App'x at 19–21; *Cody*, 936 F.2d at 719; *Simmons*, 898 F.2d at 868.  "A court may also consider federal-state comity in considering whether undue delay excuses a failure to exhaust."  *Roberites*, 546 F. App'x at 19 (citing *Brooks*, 875 F.2d at 32).  "[N]o one factor is dispositive and all are to be considered together with the relevant circumstances."  *Simmons*, 898 F.2d at 868 (collecting cases).

Here, Petitioner filed notice of his direct appeal in state court on February 1, 2018, and to date—over three years later—the merits of that appeal have not been decided.  "The doctrine of exhaustion of state remedies does not require a prisoner to wait . . . three or four years before enlisting federal aid to expedite an appeal."  *Simmons*, 898 F.2d at 870; *see also Roberites*, 546 F. App'x at 19–21 (concluding that an approximately 32-month delay between the filing of a notice of appeal and filing of a § 2254 habeas petition tilted in favor of both excusing a lack of exhaustion and finding a due process violation); *Harris v. Champion*, 15 F.3d 1538, 1546–47 (10th Cir. 1994) (concluding that a two-year delay created a rebuttable presumption of excessive delay).  *But see Collier v. Uhler*, No. 16-CV-1 (LEK), 2016 WL 6072404, at *3 (N.D.N.Y. Oct. 17, 2016) (concluding that a four-year delay "may trigger due process concerns, but it 'ultimately does not violate the constitution'" (quoting *Richard-Antonio*, 2013 WL 5019395, at *7–9)).  Additionally, there is no indication that Petitioner has failed to assert his right diligently.  When there was a delay of a few months in appointing Petitioner appellate counsel, it appears he promptly began to inquire about the delay through an acquaintance and his trial counsel.  (*See* Affirmation of Odelia Cohen, Dkt. 15.)  Petitioner also raised the issue of appellate delay in his 2019 petition to this

16

Court.  *Hayon I*, No. 19-CV-5545 (E.D.N.Y. Sept. 30, 2019), Dkt. 1.[15]  Therefore, the first and third *Barker* factors favor Petitioner.

As to the second factor, *i.e.*, the reason for the delay, Petitioner argues that the delay in his appeal is attributable to the State, pointing out that it took the Appellate Division several months to decide an unopposed motion to expand the record, and then over eight months for the additional minutes to be produced despite the Appellate Division's order imposing a 45-day deadline.  (*See* Pet'r Aff., Dkt. 13, at ECF 3; Pet'r Mem., Dkt. 14, at ECF 4; *see also* Decision & Order on Motion to Expand Appellate Record, Dkt. 17-40, at ECF 2.)  Petitioner also blames the Appellate Division for the initial four-month delay in the docketing of his appeal, because the Appellate Division did not notify his trial attorney that the Notice of Appeal had been incorrectly filed.  (*See* Pet'r Aff., Dkt. 13, at ECF 2; *see also* Pet'r Reply, Dkt. 20, at ECF 7.)

These arguments, however, are unavailing because the record demonstrates that the delay in Petitioner's state-court appeals process is largely attributable to Petitioner and his appellate counsel working to review and prosecute his appeal diligently.  *Cf. Collier*, 2016 WL 6072404, at *3 (finding that the reason-for-delay factor weighed against petitioner partly because "the delays were not the result of inaction or neglect by the Appellate Division or counsel" but "attributable to choices made by [p]etitioner himself"); *Charleston v. Gonyea*, No. 11-CV-5694 (KBF), 2013 WL 1156085, at *5 (S.D.N.Y. Mar. 20, 2013) (denying an appellate-delay claim where the appeal was decided within three years and "the majority of the delay was attributable to choices made by [petitioner] himself").  Here, after receiving transcripts of the pre-trial hearing, jury selection, trial,

---

[15]  As discussed in the Background section, the Court *sua sponte* dismissed Petitioner's prior petition in its entirety for failure to exhaust state remedies.  Therefore, Petitioner's current petition is not "second or successive" within the meaning of 28 U.S.C. § 2244(b).  *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 643–44 (1998); *Camarano v. Irvin*, 98 F.3d 44, 46–47 (2d Cir. 1996); *see also Slack v. McDaniel*, 529 U.S. 473, 487 (2000) (reaffirming *Martinez-Villareal*).

and sentencing—about 19 months into the current 43-month period of alleged delay—Petitioner's appellate counsel (with Petitioner's support) moved to expand the appellate record and extend the time to perfect the appeal.  (*See* Resp. Aff., Dkt. 17, ¶ 41; Affirmation in Support of Motion to Enlarge Appellate Record, Dkt. 17-37; *see also* Supplemental Affidavit in Support of Additional Transcript Minutes, Dkt. 17-38, at ECF 2 ("I [Petitioner] make this affirmation i[n] support of the instant motion for an order directing the transcription of minutes for <u>ALL</u> pretrial adjournment dates.").)  Appellate counsel averred that additional minutes and transcripts were "necessary to the appeal," and that counsel "[could not] adequately represent or advise" Petitioner without such records. (Affirmation in Support of Motion to Enlarge Appellate Record, Dkt. 17-37, at ECF 5–6.)  In addition to moving to expand the record, Petitioner's appellate counsel requested suppression hearing and trial exhibits from the KCDA.  (Resp. Aff., Dkt. 17, ¶ 40.)

Indeed, to date, it appears that Petitioner has not yet perfected his appeal.  (Resp. Aff., Dkt. 17, ¶ 46; *see also* Emergency Bail Motion, Dkt. 28, at ECF 6 ("My direct appeal lawyer didn't start perfecting my appeal yet.").)  According to Petitioner, he and his counsel may move for production of additional records, including grand jury minutes.  (*See* Pet'r Reply, Dkt. 20, at ECF 5 ("[M]y lawyer will need to file a new motion for grand jury transcripts and all pretrial transcripts[, as well as] the original file that caused the state judge to issue a warrant."); Pet'r Aff., Dkt. 13, at ECF 3 ("My new assigned attorney by Appellate Advocates is reviewing to see if there is a need for grand jury minutes.").)  Petitioner should be able to litigate his appeal as he sees fit, including taking the time to investigate claims that he thinks are meritorious.  But Petitioner cannot use such delays to claim that he should be afforded habeas relief because of a constitutional violation.  *Cf. Barker*, 407 U.S. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver [of the right to a speedy trial] may be given effect[.]").  With respect to

the court-related delays Petitioner points to—*i.e.*, the length of time for the court to decide the motion to expand, the transcription delay, and the failure to notify Petitioner's attorney of the defective appeal-notice filing—while Petitioner cannot be held responsible for administrative delays in the courts or his attorney's negligence, "more neutral reason[s] such as negligence or overcrowded courts should be weighted less heavily." *See id.* at 531; *see also Richard-Antonio*, 2013 WL 5019395, at *8 (finding appellate delay acceptable where "the majority of the delay was caused by a fairly 'neutral' cause: the court reporters' tardy productions of transcripts").

In sum, considering and balancing all of the facts and circumstances, the Court cannot conclude that the delay in this case amounts to a violation of due process or demonstrates that exhaustion of state-court remedies would be futile.[16]   Therefore, the delay in Petitioner's direct appeal is neither a basis for granting habeas relief nor grounds to excuse any failure to exhaust the other claims in the Petition.

### B.    Petitioner's Other Claims

Because the delay in resolving Petitioner's direct appeal does not provide grounds to excuse a failure to exhaust, there remains some question whether Petitioner has properly exhausted his other claims.  (*See* Resp. Mem., Dkt. 17-1, at ECF 4–7, 11–12, 26–27.)  But notwithstanding a failure to exhaust claims in a habeas petition, the petition may be denied on the merits.  *See* 28

---

[16]   The Court has already determined that Petitioner has not shown that the delay in his direct appeal is likely to prejudice its outcome.  *Hayon I*, 2021 WL 25365, at *5; *see also Hayon II*, 2021 WL 2206611, at *1.  Thus, even if Petitioner's appellate-delay claim were meritorious, he would be entitled to only a conditional writ, *i.e.*, a direction to the state court to decide Petitioner's direct appeal by a certain date or release him.  *See Cody*, 936 F.2d at 719–20; *Simmons*, 898 F.2d at 869.  Yet, given that Petitioner has not perfected his appeal, it is not clear what relief, if any, this Court may provide.  Indeed, in cases where the Second Circuit has granted a conditional writ on the basis of unreasonable appellate delay, including in its most recent decision in *Roberites*, the petitioner's appeal had been perfected.  *See Roberites*, 546 F. App'x at 20–21; *see also Brooks*, 875 F.2d at 31–32.

U.S.C. § 2254(b)(2); *see also Turner v. Artuz*, 262 F.3d 118, 122 (2d Cir. 2001) (per curiam) ("A district court . . . now has the option of denying mixed petitions on the merits."). Respondent, acknowledging that Petitioner "is nearing his release date" of January 2022, argues that denying Petitioner's claims on the merits "is the most appropriate outcome." (Resp. Mem., Dkt. 17-1, at ECF 30–31.) The Court agrees and disposes of Petitioner's remaining claims on the merits.

1. State Court's Denial of Motion for Bail Pending Appeal

Petitioner argues that the state court's denial of his motion for bail pending appeal violated his due process rights because the decision "was arbitrary," and Petitioner was not appointed an attorney "to research if there are a large portion of Jews in Brooklyn." (Petition, Dkt. 1, at ECF 9.) In support of his assertion that the state court's decision was arbitrary, Petitioner contends that the People's statement of readiness for trial with respect to the original indictment "was clearly illusory since they added 30 counts about six months [later]," and thus, as Petitioner seems to suggest, the state court arbitrarily rejected Petitioner's statutory speedy-trial argument. (*See id.*) This claim is plainly meritless, based on the trial court's written decision denying Petitioner bail pending appeal.

Although "there is no absolute federal constitutional right to bail pending appeal after a conviction in the state courts," *Brown v. Wilmot*, 572 F.2d 404, 405 (2d Cir. 1978) (per curiam) (citation omitted), New York provides a statutory right to seek bail pending appeal, *see* N.Y. Crim. Proc. Law § 460.50(1), *supra* note 8. "[O]nce a state makes provision for such bail, the Eighth and Fourteenth Amendments require that it not be denied arbitrarily or unreasonably." *Finetti v. Harris*, 609 F.2d 594, 599 (2d Cir. 1979) (citing *Brown*, 572 F.2d at 405). Under this standard,[17]

---

[17] Some courts in this District have questioned the continued viability of *Finetti*, especially post-AEDPA, and have concluded that a challenge to a state court's denial of bail pending appeal as being arbitrary is not cognizable on federal habeas review, based on the general principle that

20

"the role of a federal habeas court in reviewing a state denial of bail pending appeal is extremely limited." *Robinson v. Sears*, No. 07-CV-2890 (GEL), 2007 WL 2962338, at *1 (S.D.N.Y. Oct. 10, 2007). Indeed, "the mere failure of the state court to articulate reasons for its denial of bail pending appeal does not create a 'presumption of arbitrariness.'" *Finetti*, 609 F.2d at 601 (citation omitted). Rather, even where a state court does not articulate particular reasons for denying bail pending appeal, "the defendant bears the burden of showing that there is no rational basis in the record for the denial of bail." *Id.*

Petitioner does not satisfy this burden. Far from failing to articulate reasons for denying Petitioner bail pending appeal, the state court issued a seven-page written decision that addressed each of Petitioner's asserted grounds for bail, concluding that it was "highly unlikely that [Petitioner's] conviction would be reversed on his appeal" based on those grounds. (460.50 Order, Dkt. 17-47, at ECF 8.) In particular, the state court determined that Petitioner's argument concerning alleged underrepresentation of the Jewish community in the jury panel was "without merit" and "based on baseless speculation," and there was no reason for defense counsel to make a meritless motion objecting to underrepresentation of the Jewish community in the jury panel. (*Id.* at ECF 5–6.) Additionally, with regard Petitioner's speedy-trial argument, the state court reiterated the finding that it had made in denying Petitioner's CPL § 30.30 motion: "This court calculated that the People were charged for 131 days in total, and as the defendant was out on bail, the defendant's right to a speedy trial had not been violated." (*Id.* at ECF 8.)

---

state courts' applications of their own laws that do not implicate a fundamental right protected by the federal Constitution, as interpreted by the United States Supreme Court, are not subject to federal habeas review. *See, e.g.*, *Garson v. Perlman*, 541 F. Supp. 2d 515, 524–30 (E.D.N.Y. 2008); *Mitchell v. Ward*, 409 F. Supp. 3d 117, 120–21 (E.D.N.Y. 2017). The Court need not confront the issue of whether Petitioner's claim here is cognizable; even assuming it is, it is meritless.

Petitioner argues that "there are clear facts" that "make it likely that [his] conviction will be reversed on appeal," including that "the People did not declare themselves ready for trial [with respect to] the additional 30 counts [in the superseding indictment] until April 2016" and "there are at least one million Jews living in Brooklyn."  (Pet'r Reply, Dkt. 20, at ECF 5–6.)  This argument is unavailing.  Even accepting *arguendo* Petitioner's factual assertions, they in no way show that the state court's denial of bail has "no rational basis"; indeed, the state court's reasoned decision shows just the opposite.  *See Finetti*, 609 F.2d at 601; *see also Pulaski v. Hopkins*, 745 F. Supp. 882, 886 (E.D.N.Y. 1990) (concluding that habeas petitioner failed to make a *prima facie* showing that the state court's denial of bail had no rational basis, because the petitioner merely provided alternative bases on which bail might have been granted).

Because Petitioner has failed to show that the state court's denial of bail pending appeal was arbitrary, he is not entitled to federal habeas relief based on that decision.

### 2.   Speedy Trial

Petitioner argues that his federal constitutional right to a speedy trial was violated because he was arrested in May 2015, yet his trial did not start until December 2017.  (Petition, Dkt. 1, at ECF 11.)  Petitioner also includes in this claim an argument that his trial counsel was ineffective for failing to argue the constitutional speedy trial issue properly.  (*See id.*)

Petitioner presented both of these arguments to the state trial court in his CPL § 440.10 motion in July 2019 (440.10 Mot., Dkt. 17-48, at ECF 2, 5–11), and the trial court rejected both claims on the merits in a reasoned written decision (440.10 Order, Dkt. 17-51, at ECF 3–8). Plaintiff moreover applied for leave to appeal that decision to the Appellate Division and the Court of Appeals, and was denied leave in both instances.  (*See* Dkts. 17-55, 17-56.)  Accordingly, Petitioner's claims of a constitutional speedy trial violation and ineffective assistance of counsel have been "adjudicated on the merits" within the meaning of AEDPA, and the Court must apply

22

AEDPA's deferential standard of review. *See* 28 U.S.C. § 2254(d); *Bell*, 500 F.3d at 155 ("An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" (quoting *Sellan*, 261 F.3d at 312)); *Medina v. Gonyea*, 111 F. Supp. 3d 225, 236 (E.D.N.Y. 2015) ("A state court's disposition on the merits of a § 440.10 motion is an 'adjudication on the merits' for the purposes of AEDPA.").

The state court analyzed Petitioner's constitutional speedy-trial claim under the five-factored standard established in *People v. Taranovich*, *supra*, 335 N.E.2d at 306.  (440.10 Order, Dkt. 17-51, at ECF 3–6.)  "The *Taranovich* factors essentially mirror the four-part inquiry outlined by the Supreme Court in *Barker v. Wingo*." *Smith v. Maher*, 468 F. Supp. 2d 466, 474 (W.D.N.Y. 2006) (citations omitted); *see also Allan v. Graham*, No. 16-CV-1285 (KAM) (LB), 2020 WL 4482674, at *8 (E.D.N.Y. Aug. 4, 2020) ("Although the *Taranovich* test and the *Barker* test are not identically phrased, courts have noted that they are essentially 'identical.' (collecting cases)). Under both tests, a court engages in a "sensitive balancing process" in which no factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *See Barker*, 407 U.S. at 533; *see also Taranovich*, 335 N.E.2d at 305 ("[N]o one factor or combination of the factors . . . is necessarily decisive or determinative of the speedy trial claim, but rather the particular case must be considered in light of all the factors as they apply to it.")  Here, the state court determined that Petitioner "was not deprived of his constitutional right to a speedy trial" (440.10 Order, Dkt. 17-51, at ECF 6), considering that "[m]ost of the adjournments in this case were . . . for [Petitioner]'s benefit" (*id.* at ECF 5), Petitioner was released on bail pending trial (*id.*), and Petitioner suffered "no prejudice" from any delay (*id.* at ECF 6).  The state court's balancing of the factors and ultimate conclusion are neither an objectively unreasonable

application of clearly established federal law nor based on an objectively unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

The same is true with respect to the state court's rejection of Petitioner's claim of ineffective assistance of trial counsel.  Ineffective-assistance-of-counsel claims under federal law "are squarely governed" by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Terry Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).  Under this two-part test, a defendant must show that "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  In assessing whether counsel's performance was deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  Here, the state court found that Petitioner's defense counsel "filed appropriate pre-trial motions," including a motion to dismiss the indictment based on a statutory speedy trial violation under CPL § 30.30.  (440.10 Order, Dkt. 17-51, at ECF 7–8.)  Overall, the court determined that "the record reveals that [Petitioner] did, in fact, receive effective and meaningful assistance of counsel."  (*Id.* at ECF 8.)  The Court cannot find that that determination was unreasonable.  *See* 28 U.S.C. § 2254(d).[18]

---

[18]  Petitioner argues and moves for a declaration that AEDPA is unconstitutional.  (Motion to Declare AEDPA Unconstitutional, Dkt. 27, at ECF 2–3.)  The Court cannot deny that AEDPA "resembles a twisted labyrinth of deliberately crafted legal obstacles that make it as difficult for habeas petitioners to succeed in pursuing the Writ as it would be for a Supreme Court Justice to strike out Babe Ruth, Joe DiMaggio, and Mickey Mantle in succession."  Stephen R. Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity*, 113 Mich. L. Rev. 1219, 1220 (2015).  In fact, several judges have expressed the view that AEDPA's mandated deference to state-court decisions violates the Constitution and separation of powers.  *See Evans v. Thompson*, 524 F.3d 1, 1–5 (1st Cir. 2008) (Lipez, J., dissenting) (joined by Torruella, J.); *Crater v. Galaza*, 508 F.3d 1261, 1261–70 (9th Cir. 2007) (Reinhardt, J., dissenting) (joined by Pregerson, Gould, Paez, Berzon, JJ.); *Lindh v. Murphy*, 96 F.3d 856, 885–90 (7th Cir. 1996) (Ripple, J., dissenting) (joined by Rovner, J.); *see also Davis v. Straub*, 445 F.3d 908, 910–11 (6th Cir. 2006) (Martin, J., dissenting) (joined by Daughtrey, Moore, Cole, Clay, JJ.) (arguing that the Sixth Circuit's view of AEDPA in *Davis* "offends the judicial power under Article III" and "suspends the writ of habeas

Thus, Petitioner has failed to demonstrate that the state court's rejection of his speedy-trial and related ineffective-assistance-of-counsel arguments was contrary to, or an unreasonable application of, clearly established Federal law or that the decision was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

### 3.   Jury Wheel

Last, Petitioner contends that the "jury wheel" in this case was "unconstitutional" because there "were no Jews in the jury wheel," and "Brooklyn has a lot of Jews."  (Petition, Dkt. 1, at ECF 17.)  This claim fails even under *de novo* review.

"The Sixth Amendment requires that jury panels be drawn from a source representing a 'fair cross section' of the community in which the defendant is tried."  *United States v. Jackman*, 46 F.3d 1240, 1244 (2d Cir. 1995) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 536 (1975)). Establishing a *prima facie* violation of this fair-cross-section requirement entails showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *accord United States v. Rioux*, 97 F.3d 648, 654 (2d Cir. 1996); *Jackman*, 46 F.3d at 1245–46.  The Second Circuit has held that Jewish people are part

---

corpus in violation of Article I, Section 9").  However, every circuit to have considered the issue has decided that AEDPA is constitutional.  *See Cobb v. Thaler*, 682 F.3d 364, 373–77 (5th Cir. 2012); *Bonomelli v. Dinwiddie*, 399 F. App'x 384, 387 (10th Cir. 2010); *Evans v. Thompson*, 518 F.3d 1, 5–12 (1st Cir. 2008); *Crater v. Galaza*, 491 F.3d 1119, 1122–30 (9th Cir. 2007); *Mueller v. Angelone*, 181 F.3d 557, 572–73 (4th Cir. 1999); *Lindh*, 96 F.3d at 868–74.  The Second Circuit has not weighed in.  The Court finds that this case does not present the Court an appropriate opportunity to decide the issue because the disposition of Petitioner's claims would be the same regardless of whether the Court applied deference under AEDPA.  Therefore, Petitioner's motion for a declaration that AEDPA is unconstitutional is denied.

of a "distinctive" group for purposes of the *prima facie* inquiry.  *See United States v. Gelb*, 881 F.2d 1155, 1161 (2d Cir. 1989).

Nevertheless, Petitioner's claim cannot succeed because Petitioner has not adequately demonstrated that Jewish people are underrepresented in jury venires in Brooklyn, or that any underrepresentation is due to "systematic exclusion" in the jury-selection process.  Petitioner proffers, based on running for public office three times in Brooklyn, that "there are at least one million Jews living in Brooklyn."  (Pet'r Reply, Dkt. 20, at ECF 6.)  Additionally, in his CPL § 460.50 bail motion in the state court, Petitioner "assert[ed] that no people with Jewish surnames or who were otherwise identifiable as Orthodox Jews appeared in the venire from which his trial jury was selected."  (460.50 Mot., Dkt. 17-41, at ECF 11.)  Petitioner also asked the state court "to take judicial notice that none of the jurors in the jury wheel appeared to be Jewish."  (Affirmation and Reply for Stay Pending Appeal, Dkt. 17-45, at ECF 5.)  These assertions are unavailing.  To start, "[s]tereotypical ethnic or religious characterizations of surnames are unreliable and only tenuous indicia of a jury's makeup."  *Gelb*, 881 F.2d at 1161–62.  Moreover, the Sixth Amendment "impose[s] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population."  *Taylor*, 419 U.S. at 538.  "In other words, the Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself."  *Jackman*, 46 F.3d at 1244 (citing *Roman v. Abrams*, 822 F.2d 214, 229 (2d Cir. 1987)).  Therefore, that there were no nominally identifiable Jewish people in Petitioner's particular jury venire does not demonstrate underrepresentation.  *Cf. id.* at 1246 (explaining that the second element generally requires courts to determine whether the "distinctive" group is "significantly underrepresented" in the jury selection process (brackets and citation omitted)).  Even accepting *arguendo*, however, that Jewish people are underrepresented in jury venires in

Brooklyn, Petitioner offers nothing to show that such underrepresentation is due to "systematic exclusion" in the jury-selection process. *Cf. Duren*, 439 U.S. at 366 (noting that exclusion of groups that is "inherent in the particular jury-selection process utilized" qualifies as "systemic"). In short, as the state court found, Petitioner's "argument is based on baseless speculation." (460.50 Order, Dkt. 17-47, at ECF 6). *Cf. United States v. Schlesinger*, 360 F. Supp. 2d 512, 527 (E.D.N.Y. 2005) (denying a transfer of venue from Long Island to Brooklyn because the defendant's argument that Long Island jury panels "are predominately made up of Long Island residents, and therefore devoid of Hasidic Jews," was "speculative").

Thus, Petitioner is not entitled to habeas relief based on a fair-cross-selection claim.

## CONCLUSION

Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is denied in its entirety. The motion for a declaration that AEDPA is unconstitutional is also denied. No certificate of appealability shall issue because the Court does not find that reasonable jurists could debate that the petition "should have been resolved in a different manner" or that it raises issues "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: August 24, 2021
      Brooklyn, New York